JOHN K. HAMMER ET AL., APPELLANTS, V. DEPARTMENT OF
ROADS, STATE OF NEBRASKA, ET AL., APPELLEES.

120 N. W. 2d 909

Filed April 5, 1963. No. 35406.

Tye, Worlock & Knapp and Dier & Ross, for appellants.

Clarence A. H. Meyer, Attorney General, Harold S.
Salter, William J. Orester, and Ward W. Minor, for
appellees.

Heard before WHITE, C. J., CARTER, MESSMORE, YEAGER,
SPENCER, BOSLAUGH, and BROWER, JJ.

SPENCER, J.

This is an action brought by John K. Hammer, Francis L. Richards, and Richard A. Dier, appellants, hereinafter referred to as plaintiffs, to enjoin the Department of Roads, State of Nebraska, and City of Kearney, from denying them access to a portion of a controlled access highway being built by the State in the City of Kearney. Plaintiffs perfected an appeal to this court from the denial of relief.

The Department of Roads, State of Nebraska, hereinafter referred to as State, and the city of Kearney, hereinafter referred to as city, after negotiations extending over a 6-year period, entered into a series of contracts under which they proposed to relocate State Highway No. 10 from Central Avenue to Second Avenue. Under the plan, the city would construct the segment from Eleventh Street north through the city of Kearney to Thirty-ninth Street on a city-federal matching basis, with the State acting as liaison between the city and the Federal Bureau of Roads. The State would assume the responsibility for constructing the highway south from Eleventh Street to Interstate Highway No. 80, approximately a distance of 1 mile, through agricultural or undeveloped rural territory, of which approximately ½ mile is within the city limits. This segment is to be constructed on a state-federal matching basis, with the city paying no part of the cost.

The plaintiffs own a 3-block area extending 1,040 feet north and south along the west side of Second Avenue. This area is bounded on the north by Eleventh Street and on the south by Eighth Street. The area south of Eighth Street is an unplatted area. From Eleventh Street south to Interstate Highway No. 80 the highway is to be a controlled access highway, with access permitted at only four points: Eleventh Street; Eighth Street; a point approximately 1,500 feet south of Eighth Street but still within the city limits; and at a county road which is outside the city. There is no access control

on any portion of the highway being built by the city north of Eleventh Street. The block between Eleventh and Twelfth Streets is undeveloped. The area north of Twelfth Street is a built-up residential area. The highway north of Eleventh Street through the city will have a center median 10 inches in height, which will permit crossing only at street intersections.

Sometime in the latter part of 1961, the plaintiffs learned of the access control feature of the road and attempted to secure a change. On December 6, 1961, they accompanied the mayor and the city manager of Kearney to Lincoln and discussed the matter with officials of the State. During this session there was some discussion about the opening of a road onto Second Avenue, to be designated as Tenth Street. There is a dispute as to exactly what was said, but accepting the plaintiffs' version, the testimony of the mayor is as follows: "Q And they said that they wouldn't allow that access. A I don't believe they said they wouldn't allow it. They said they didn't want it. Q They did not agree to the allowance of this 10th Street to have access. A They did not agree to it, no. Q Do you recall telling them that it was actually going to be dedicated? That wasn't mentioned, was it? A I believe we told them we were contemplating it. Q Contemplating it. A Yes, sir."

The city manager, who also was a witness for the plaintiffs, however testified as follows: "Q You were one of those that were in the conference in Lincoln on the 6th day of December, 1961. A Yes, sir. Q And at that time was it your impression that the state indicated to the people who were there from The City of Kearney that there would be any relaxation of access between 8th and 11th Streets? Did you come away from that conference with that kind of an impression? A I felt that Mr. Coffey, the design engineer, made it plain that he did not want access or openings onto Highway 10 between 8th and 11th."

Subsequent to this trip to Lincoln, and on January 3,

1962, the city received the dedication of Tenth Street, and on January 9, 1962, accepted it. Up to the time of the trial, however, Tenth Street had not been opened up for use as a street. It still remained the field that it was prior to the dedication.

On February 13, 1962, an agreement prepared by the State covering the project was presented to the city council for action. By this agreement the city agreed to review the plans for the construction work to be done by the State within the corporate limits of the city and to indicate approval by signing the agreement. The agreement also contained the following provision: "The City hereby agrees: * * * (d) To require that all future entrances from private property to the public right of way within the limits of this project receive prior approval of the State Engineer or his authorized representative." Attached to the agreement were the plans which provided for the access at Eleventh Street and Eighth Street but none at the then-dedicated but unopened Tenth Street. This agreement was approved by the city council as presented, and one of the plaintiffs, who was a city councilman, voted for approval.

Plaintiffs brought this action against the State to enjoin the denial of the access, alleging such denial was unreasonable, arbitrary, and discriminatory.

The State, by amended answer, denied that its action was unreasonable, arbitrary, or discriminatory, but rather was reasonable and proper to safeguard the traveling public. By way of cross-petition against the city, the State alleged that after extended negotiations, the agreement was signed; that previous to the signing of the agreement, Tenth Street was dedicated; that this fact was never brought to the attention of any representative of the State; that the State has proceeded with its plans for building said project; that said project is tied to other highway construction projects; that any change of plans could result in the withdrawal of federal participation and a great increase in expense to the State;

and requested the court to set aside the dedication of Tenth Street. The city answered the cross-petition, denying generally and praying that Tenth Street as dedicated be permitted access.

The trial court denied the injunction requested by the plaintiffs, denied the vacation of Tenth Street, but held that the city was estopped to claim that Tenth Street should open onto Second Avenue, and that the city should be enjoined from interfering with the construction of the project under the agreement.

The plaintiffs set out three assignments of error: "1. The court erred in finding there was a necessity for the denial of access to the property in question. 2. The court erred in finding that the action of the defendants, City of Kearney and State of Nebraska, in denying access to these three blocks, inside the city limits of Kearney, was not discriminatory, arbitrary and unreasonable. 3. The court erred in finding an estoppel against the City of Kearney for its city street opening onto Second Avenue."

There is no constitutional limitation in this state on the right to take private property for public use under the power of eminent domain, except as to the right to just compensation. Consequently, the Department of Roads of the State of Nebraska may proceed at will, and the extent, method, and necessity of exercising the power may not be interfered with by the other departments of government. See May v. City of Kearney, 145 Neb. 475, 17 N. W. 2d 448.

This case in no way involves the question of taking property without just compensation. Plaintiffs' petition alleges that the State has notified them of its intention to condemn one-half acre of land off the west edge of their property and to deny them access onto Second Avenue. They brought this action to enjoin the denial of access. Any and all damages sustained by the plaintiffs, including damages for loss of access if they are unsuccessful, will be determined in the condemnation proceeding.

Involved here is the question of the right of the State to deny access under the facts in the case.

Substantially, the first two assignments of error complain that the action of the State in establishing controlled access on Second Avenue between Eleventh Street and Eighth Street is arbitrary, unreasonable, and discriminatory because there is no controlled access north of Eleventh Street on Second Avenue.

The specific right of the State to control access to a highway is granted by section 39-1327, R. R. S. 1943. The plaintiffs do not challenge the right as such, nor do they question the State's compliance with the necessary procedure to establish control of access. Their complaint is that access control in this instance is unnecessary, unreasonable, arbitrary, discriminatory, and capricious.

The plaintiffs tried this case on the theory that it was the duty of the State to show a need for controlled access. As a general rule, action taken by a governmental agency within its legally constituted authority is presumed to be valid. The burden to prove otherwise is on the litigant contesting its validity. See Hillerege v. City of Scottsbluff, 164 Neb. 560, 83 N. W. 2d 76. Applying this rule, it is then necessary for the plaintiffs to establish by clear and unequivocal proof that the denial of access to their property is unreasonable, arbitrary, or discriminatory.

The plaintiffs produced two of the property owners, one the attorney who tried the case in the district court, the other a member of the city council; two other councilmen; the mayor; and the city manager. None of these witnesses had or claimed to have any engineering training or experience. Further, except for the city manager, none of them could in any way be considered as an authority or expert on traffic problems or the control of traffic. On direct examination the city manager, in response to a question as to his opinion on the matter of the need for completely controlled access for the 1,040

feet between Eleventh Street and Eighth Street, testified: "I think it's all right to control access."

The plaintiffs complain that they are discriminated against because there is no access control north of Eleventh Street along the entire stretch of Second Avenue through the city. The area north, however, is mostly built up with residential property, and the testimony is that the cost of access control through that area, because of the improvements, would be prohibitive. All of the construction on Second Avenue north of Eleventh Street is under the control of the city and no state funds are involved. The area south of Eleventh Street is agricultural land and the construction is under the control of the State, with no city money involved. The State's witnesses included two qualified engineers who testified that there was a need for access control and that it was desirable construction in this area. Substantially, the State's testimony is that controlled access was adopted to protect the highway, to minimize the number of turns on and off the highway, and to prevent the development along the highway of hamburger and pop stands and similar enterprises which create traffic problems.

As we view the evidence, there was ample justification for the State to start access control at Eleventh Street. The plaintiffs wholly failed to sustain their burden of proving otherwise. This planning concept is provided by our law, and courts should be slow to substitute their judgment for that of those to whom the planning is delegated. We call attention to section 39-1301, R. R. S. 1943, which provides in part: "Recognizing that safe and efficient highway transportation is a matter of important interest to all of the people in the state, the Legislature hereby determines and declares that an integrated system of highways is essential to the general welfare of the State of Nebraska. * * *

"In designating the highway system of this state, as provided by the provisions of sections 39-1301 to 39-1362, the Legislature places a high degree of trust in the

hands of those officials whose duty it shall be, within the limits of available funds, to plan, develop, construct, operate, maintain, and protect the highway facilities of this state, for present as well as for future uses."

Plaintiffs' third assignment of error concerns the finding of estoppel against the city of Kearney for Tenth Street opening onto Second Avenue. The State in its cross-petition did not ask for estoppel but for the vacation of the street. It did, however, ask for such other relief as may be just and equitable. The city in its answer does ask the court to recognize the dedication and that the street be permitted direct access to Second Avenue.

Plaintiffs' petition indicates that this action was brought when they were informed that the State intended to condemn, and before the actual filing of the condemnation action. So far as this record indicates, no condemnation action has ever been filed concerning the property involved in this action.

Plaintiffs, by their dedication of Tenth Street, transferred the fee in the street to the city, so that the city is now the owner of the portion of the street abutting on Second Avenue. § 17-417, R. R. S. 1943. The trial court properly held that it could not order the vacation of Tenth Street for the reason that it is possible to have the street without access to Second Avenue. Access could be to a service road connected with the access at Eleventh Street and at Eighth Street, or to a street on the other side of the property.

The mere dedication of a street does not ipso facto incorporate it into the construction plans which had been drawn previous to the dedication. The agreement, exhibit No. 3, had been prepared at least before December 26, 1961, because it has a filing stamp of district No. 7, Department of Roads and Irrigation, on that date. The dedication was accepted by the council on January 9, 1962. Exhibit No. 3 was presented to and approved by the council on February 13, 1962.

There is no question that at the time the agreement was presented to the city, the State had no knowledge that the city had accepted the dedication of Tenth Street. Further, an investigation of the premises would not have disclosed the dedication because no work of any kind was done to open up the street. Even at the time of the trial of this action in the district court, the street was unopened and the dedication could not have been discovered except by an inspection of the record.

The plaintiffs urge that the State is bound by the record of the dedication, and further that its representatives had been apprised of intent to open the street. We have set out the evidence of the plaintiffs on this point. The State made it clear that it would not agree to access at Tenth Street, and the most that can be said for the plaintiffs' evidence is that the mayor told a representative of the State they were contemplating opening the street. In this connection, we should also consider the following statement from the mayor's testimony: "And it was my understanding when we left that if access was denied from 8th to 11th then a parallel service road would be built and damages would be allowed to take care of that."

The agreement provides: "Section 1 The City hereby agrees: (a) To review plans for the construction work undertaken by the State within the corporate limits of said City and to indicate their approval by signing this agreement." The plans for construction work attached to the agreement which the city agreed to review provide for access at Eleventh Street and at Eighth Street, but do not provide access at any other point between those two. This fact was known to the council when the agreement was approved, and one of the landowners who instigated this action was present as a councilman and voted for approval of the agreement.

It is evident in this record that the city was fully informed of the State's position. It is equally evident that when the city approved the agreement, the council

understood that the State did not contemplate permitting access for the dedicated but unopened street. While the city may not have intended to deceive, its representatives could not help but be aware of the fact that the State did not know the council had approved the dedication of Tenth Street the preceding month, and if the city intended to insist on the opening of Tenth Street the dedication should have been called to the attention of the State. The agreement made by the city with the department is one specifically authorized by section 39-1336, R. R. S. 1943. By approving the agreement under the circumstances in this case, the city estopped itself from now claiming that Tenth Street should open onto Second Avenue.

It is undisputed that if this additional access is permitted, the Bureau of Public Roads will withdraw the federal funds committed to the project. This necessarily will increase the financial burden on the State. It would be inequitable in the extreme to permit the city to now insist upon the opening of Tenth Street onto Second Avenue.

We said in Talbott v. City of Lyons, 171 Neb. 186, 105 N. W. 2d 918: "Ordinarily the doctrine of equitable estoppel cannot be invoked against a municipal corporation in the exercise of governmental functions but exceptions are made where right and justice so demand, particularly where the controversy is between one class of the public as against another class."

We feel the rule that the doctrine of equitable estoppel may be invoked against a municipal corporation where there have been positive acts by the municipal officers which may have induced the action of a party and where it would be inequitable to permit the corporation to stultify itself by retracting what its officers had done, has application in this case. See May v. City of Kearney, 145 Neb. 475, 17 N. W. 2d 448. While it is true the city did not specifically agree that it would not open up a public way between Eighth Street and Elev-

enth Street, it knew that the State would not approve the project if this was done.

Section 39-1327, R. R. S. 1943, authorizes the Department of Roads to provide for the elimination of intersections at grade with existing roads, streets, or highways if the public interest shall be served thereby, and provides that no road, street, or highway shall be opened into or connected with a controlled access facility without the consent of the department, and in order to carry out the purposes of control of access, the department is given the right to acquire public or private property.

For the reasons given above, the judgment of the trial court is in all respects correct, and is affirmed.

AFFIRMED.