IN RE APPLICATION U-2.
CENTRAL NEBRASKA PUBLIC POWER AND IRRIGATION DISTRICT,
APPELLEE, V. JOHN D. AND PATTY R. ABRAHAMSON ET AL.,
APPELLANTS, EVERT ANDERSON ET AL., APPELLEES.
413 N.W.2d 290

Filed October 2, 1987.   No. 86-119.

Steven G. Seglin and Leroy W. Orton of Crosby, Guenzel, Davis, Kessner & Kuester, and Bruce A. Peterson of Anderson, Strasburger, Klein, Peterson and Swan, for appellee Central Nebraska Public Power and Irrigation District.

Larry L. Ruth and Rodney M. Confer of Knudsen, Berkheimer, Richardson & Endacott, for appellants.

Robert M. Spire, Attorney General, and LeRoy W. Sievers, for appellee State of Nebraska.

Gene D. Watson and John C. McClure, for amicus curiae Nebraska Public Power District.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

GRANT, J.

On November 2, 1984, the Central Nebraska Public Power and Irrigation District (hereinafter Tri-County) filed an application (Application U-2) with the Department of Water Resources (DWR), seeking recognition of incidental water storage in the three-county area of Gosper, Phelps, and Kearney Counties. The application alleged that a large mound of underground water had formed in this area as a result of seepage from Tri-County's 600-mile surface canal irrigation system. At that time Neb. Rev. Stat. § 46-226.01 (Reissue 1984)

provided as follows:

> Any person having an approved perfected appropriation may file with the department an application for recognition of incidental underground water storage associated with such appropriation, and for recovery of such water, on a form prescribed and furnished by the department without cost. Upon receipt of an application, the department shall proceed in accordance with rules and regulations adopted and promulgated by the department.

That section was amended by 1985 Neb. Laws, L.B. 488, effective April 27, 1985, and codified as § 46-226.01 (Cum. Supp. 1986), by deleting the words "and for recovery of such water." The remainder of the statute was not changed, nor were there any additions. The hearing on Application U-2 began on July 31, 1985.

In conformity with the requirements of § 46-226.01, Tri-County set out in Application U-2 that the application was "for a permit to modify application or appropriation Nos. 2355; 2374; 3476; 3620; 3823; 4656; 5278; 7716; 9673; 10280; 10281 and 10282." The first of these applications had been filed on January 13, 1934, giving that application a priority date as of the filing, and the last three were filed with a priority date of January 20, 1964. All the applications which were to be amended by Application U-2 were for irrigation except No. 2374, which sought storage of water at Lake McConaughy in Keith County, Nebraska.

Application U-2 also sought service of additional lands not previously identified as being served by facilities included under any of Tri-County's 12 original appropriations. Application U-2 was objected to by numerous owners of lands overlying the water mound sought to be recognized as incidentally stored water. A hearing was held before the assistant director of DWR, who was the hearing officer for the proceedings. By a corrected order dated January 10, 1986, the director of DWR made findings and conclusions and approved Application U-2, in the following form:

> Application U-2 is APPROVED IN PART. Approval extends to all water appropriations listed above, except for

A-2374 which shall be limited to that portion of it identified in the records of the Department of Water Resources as A-2374R. Those water appropriations are hereby MODIFIED to include recognition of incidental ground water storage beneath the three-county area depicted on Map 6 [later corrected to Map 5] of Exhibit 3 (a metes and bounds description of the area perimeter is contained in Exhibit 12 and by reference is incorporated herein). Incidental ground water storage is from seepage and downward percolation of surface water diverted from the Platte River or from supplies previously impounded in Lake McConaughy and other Tri-County reservoirs. Other conditions made upon approval of Application U-2 are:

(1) This approval shall not alter the grant allowed each water appropriation nor shall the rate, quantity or time of surface water diversion for each be increased from that existing on the filing date of Application U-2. Neither shall this approval authorize structural modification of the facilities used to impound in surface reservoirs or to divert, carry or deliver water. The diversion rate for natural flow from the Platte River under water appropriations A-2355, A-10280 and A-10281 shall be governed by the provisions of §§ 46-231 and 46-240.01 which specify water duty limitations.

(2) The priority date for each water appropriation listed above shall not be changed.

(3) Water incidentally stored underground shall be withdrawn or otherwise be used for a beneficial purpose.

(4) Imposition of certain fees for mechanical extraction of ground water shall not be undertaken without prior approval from the Director as prescribed in § 46-2,100.

The order also stated that sufficient evidence was found to support the belief that Tri-County's irrigation project had resulted in the formation of the underground water mound sought to be recognized as incidental water storage, that DWR had consulted with the Nebraska Game and Parks Commission as required by Neb. Rev. Stat. §§ 37-430 to 37-438 (Reissue 1984), and that the project did not jeopardize endangered or

threatened species. The order further stated that the approval of Application U-2 would improve Nebraska's standing in the event of interstate disputes involving the Platte River and its tributaries and that the public interest would be served if the application was approved. The order specifically left the determination of the constitutionality of § 46-226.01 to this court. The objectors to the application timely appeal to this court.

The seven errors assigned by appellants may be consolidated into four: (1) whether DWR erred in approving Application U-2 without having first found that the water stored or to be stored will be used for irrigation purposes; (2) whether § 46-226.01 is unconstitutional, in that it permits the taking of storage under the overlying property owners' land without just compensation and is an unconstitutional delegation of legislative authority, and whether DWR's regulations are sufficient to properly advise the public of what information is required by DWR before an application for incidental storage will be granted; (3) whether DWR erred in recognizing the incidental water storage occurring before the effective date of § 46-226.01; and (4) whether DWR erred by not applying the interbasin transfer statutes, Neb. Rev. Stat. §§ 46-288 and 46-289 (Reissue 1984), in its consideration of Application U-2. For the reasons hereafter stated, the decision of DWR approving Application U-2 is affirmed.

The facts concerning Application U-2 are largely undisputed. The record shows that Tri-County holds 12 separate permits for irrigation and water storage. Its facilities are located in Keith, Lincoln, Dawson, Gosper, Phelps, and Kearney Counties in Nebraska, and include facilities of the district such as Lake McConaughy, Kingsley Dam, Kingsley Power Plant, Diversion Dam, Supply Canal, Jeffrey Reservoir and Power Plant, Johnson Reservoir, Johnson No. 1 Power Plant, Johnson No. 2 Power Plant, Canaday Steam Plant, and irrigated areas served from the Supply Canal, Lateral 365, Carl T. Curtis Dam and Pump Station, Elwood Reservoir, Lateral E67, and the Phelps County Canal. Its irrigation system consists largely of three separate feeder canals. Tri-County's earlier permits, set out above, authorize the service of irrigation

to approximately 138,000 acres of land in the area of Gosper, Phelps, and Kearney Counties. The overall length of the laterals and feeder canals constituting the basis for the irrigation service to those acres totals approximately 600 miles.

Hydrologists, qualified as expert witnesses testifying for Tri-County, established the level of the ground water underlying the three-county area in the predevelopment period (using data from between 1931 and 1952) before Tri-County began its irrigation services in 1941. The level of the ground water in 1983 was also established. The difference between the two levels was determined to be water incidentally stored underground as a result of Tri-County's irrigation operation and the seepage therefrom. The perimeters of the underground storage area were also established by expert witnesses, using data from wells drilled in the area between 1941 and 1983. The quantity of such incidentally stored water was determined to be between 6.5 million and 7 million acre-feet of water, in natural underground storage, beneath approximately 684,000 acres of land located in the three-county area.

This amount of land includes the 138,000 acres already identified as being irrigated in Tri-County's 12 existing water appropriations. In addition to this land, the water mound lies beneath approximately 546,000 acres of land which were not being served by any of Tri-County's existing appropriations. In this area, 257,300 acres are currently being irrigated by well, and 288,700 acres are not being irrigated in any manner.

The proper standard of review for this court to follow in cases involving appeals from DWR under the provisions of Neb. Rev. Stat. § 46-210 (Reissue 1984) is to search only for errors appearing in the record; i.e., to determine if the judgment conforms to law, if it is supported by competent and relevant evidence, and if the DWR action is neither arbitrary, capricious, nor unreasonable. *In re Application A-15738, ante* p. 146, 410 N.W.2d 101 (1987).

The appellants' first assignment of error contends that

[t]he Director erred by approving the service of additional amounts of land or different lands not identified to be served under the 12 original applications without first finding that the water stored or to be stored underground

will be used for irrigation purposes, and that action was arbitrary and capricious.

The appellants rely on a strict construction of Neb. Rev. Stat. § 46-226.02(1)(b) (Cum. Supp. 1986), which provides that the director of DWR may approve the service of additional amounts of land not already identified as being served by an existing appropriation "[i]f the water stored or to be stored underground will be used for irrigation purposes." Appellants' position reads into the statute a condition that it must be shown the water will be used for irrigation of each acre of land overlying the storage area before the application can be approved.

Appellants' position seems to imply that in order to comply with § 46-226.02(1)(b), the water incidentally stored must be used immediately for irrigation on the land under which it is stored. Such a concept is at odds with the basic meaning of "storage," which has been defined to mean "a space for storing." To store something is "to stock or furnish against a future time" or "to collect as a reserved supply." Webster's Third New International Dictionary, Unabridged 2252 (1981). We hold that in § 46-226.02(1)(b), the phrase "will be used for irrigation purposes" is to be construed as water being available for irrigation uses after the storage.

In connection with this contention, the director's corrected order stated:

> (13) In disputing the meaning of "service," the parties centered their attention upon the intent of § 46-226.02 (1)(b). Objectors advocate a narrow definition. They contend that service is accomplished when water is provided directly to irrigated fields. Tri-County argues for a less restraining interpretation. It contends that service has already been rendered. Recharge of the ground water reservoir underlying both projects lands and others constitutes the service.
>
> In turning to the language adopted by the legislative body and to legislative history for guidance, Tri-County's assertions are deemed better. As a precondition to approving Application U-2 (or other applications like it), the Legislature did not indicate or even imply that an

applicant must first provide wells, pumps, pipelines, energy needs and any other ingredients necessary to extract recharged ground water. Therefore, recharge of the ground water reservoir which supports present, and will support additional future uses, constitutes Tri-County's service.

Lands, including those authorized by the water appropriations listed above, which overlie the ground water reservoir recharged by the Tri-County project, are depicted on Map [4] of Exhibit 3. They are "squared off" for administrative convenience on Map [5] of Exhibit 3. A substantial portion of the total is now irrigated with ground water. Nothing in the record suggests that significant future uses will be for anything other than irrigation.

Thus, all the lands depicted are properly within the scope of Application U-2. They should be incorporated in the ultimate ruling made herein.

We agree with the director as to the meaning of "service" in § 46-226.02(1)(b), as used in this case. The service to be rendered in Application U-2, in this case, consists of the storage of water underground "for irrigation purposes."

Underlying the problem facing the director of DWR in determining this issue is the fact that this underground water storage is not held in neatly confined reservoirs or bins, but is available as nature presents the situation to humans trying to avail themselves of something furnished by nature—the underground strata making water storage possible. It is completely unrealistic to pretend the water which accumulates under Tri-County's laterals and canals will remain in storage precisely under the lands which Tri-County has been authorized to service with irrigation waters. The water, of necessity, will move into the entire natural storage field, following the laws of nature. The outline of that storage field was testified to and established by expert testimony, and not seriously questioned by appellants. Realizing that, the fact that some of the storage field lies beneath land not irrigated should not require that the entire project be lost on that account alone.

Section 46-226.02(1)(d) is also applicable to Application U-2,

and must be considered. This section of the statute allows the director to approve an application when the application is for incidental underground water storage and the stored water apparently is being withdrawn or is otherwise being used for beneficial purposes. One of the purposes of Application U-2 has been stated as to seek recognition of incidental underground water storage as a beneficial use. The director of DWR found that "[i]n providing water for direct irrigation and for recharge, the Tri-County project is an economic and social benefit to the community. Public interest has been and is being well served." The incidentally stored water is being withdrawn for irrigation purposes for the 257,300 acres of overlying land which is irrigated. As to the acres of unirrigated land, the water there is available to be withdrawn for beneficial uses such as domestic, municipal, or irrigation, under the authorization of DWR. We agree with the determination of the director that the project authorized in the order granting Application U-2 is an economic benefit to the region. We hold that the director did not err, in the manner alleged in appellants' first assignment of error, in granting approval to Application U-2.

Appellants' second assignment of error contends that § 46-226.01 is unconstitutional in that permitting a taking of the storage under overlying property owners' land without just compensation is an unconstitutional delegation of legislative authority, and in that the director has not provided sufficient regulations for an application. We have held that state laws are accorded a presumption of constitutionality, and when a law is constitutionally suspect, this court will endeavor to interpret it in a manner consistent with the Constitution. *State ex rel. Wright v. Pepperl*, 221 Neb. 664, 380 N.W.2d 259 (1986); *State v. Mayhew Products Corp.*, 211 Neb. 300, 318 N.W.2d 280 (1982). Furthermore, unconstitutionality must be clearly established before this court will declare a statute void. *State v. Copple*, 224 Neb. 672, 401 N.W.2d 141 (1987).

Appellants first contend § 46-226.01 is unconstitutional because it allows for the taking of storage space beneath overlying property owners' land without just compensation, citing Neb. Const. art. I, § 21, which provides, "The property of no person shall be taken or damaged for public use without

just compensation therefor." Appellants urge that landowners have a constitutionally protected property right in the storage space beneath their property, derived from their right to use the water.

In this connection, the manner in which water is treated in the Nebraska Constitution and the statutes enacted thereunder becomes of critical importance. Neb. Const. art. XV, § 4, provides: "The necessity of water for domestic use and for irrigation purposes in the State of Nebraska is hereby declared to be a natural want."

In *Metropolitan Utilities Dist. v. Merritt Beach Co.*, 179 Neb. 783, 140 N.W.2d 626 (1966), we specifically recognized the relation of this section to underground water. At 799-800, 140 N.W.2d at 636-37, we stated:

The Constitution of Nebraska provides that the necessity of water for domestic use and for irrigation purposes in the State of Nebraska is a natural want. Art. XV, § 4, Constitution. While this section of the Constitution has been related primarily to the diversion of water from rivers and streams, its relation to underground water is no different. Historically the state adopted the riparian right theory of the common law of England and subsequently impressed upon it the doctrine of appropriation. The rights of appropriators under the latter doctrine have been spelled out by statute and judicial interpretation while the rights of riparian landowners remain unsettled and undefined.

Underground waters, whether they be percolating waters or underground streams, are a part of the waters referred to in the Constitution as a natural want. Such waters are as much a part of the hydrologic cycle as the flow of water in a stream or river. It is true that such waters are not concentrated as in a river nor do they move with the velocity of a river, but they do percolate through underground formations and have the same source and termination as surface water flowing in a river. Underground waters are a part of the source of water supply to a growing population and an expanding economy the same as the surface waters flowing in a live

stream on the surface of the ground. Because of the ever-increasing demands for water control of underground waters as well as the flow of rivers and streams, it is becoming more important and extremely necessary that regulation and control of all sources of water supply be attained. Without any declaration of public policy as to the use of underground waters other than the constitutional declaration that they are a natural want, we adhere to the rule that such waters must be reasonably used for a beneficial purpose without waste. It is axiomatic that waters which flow beyond the points of use to the sea are lost and constitute a form of waste, which is against public policy.

Statutes have been enacted concerning many phases of the problems arising from water, its scarcity or overabundance at times, the need of the state for water, and the public interest considerations that must govern the use of water.

The Nebraska Legislature has enacted the Nebraska Ground Water Management and Protection Act, Neb. Rev. Stat. §§ 46-656 to 46-674 (Reissue 1984). This act was first adopted in 1975, and at the time of the application and hearing in this case had last been amended as of July 10, 1984, and February 15, 1985. Section 46-657(2) states: "Ground water shall mean that water which occurs, moves, seeps, filters, or percolates through ground under the surface of the land."

That definition of ground water was further clarified in Neb. Rev. Stat. § 46-296(4) (Cum. Supp. 1986), which states: "Underground water storage shall mean the act of storing or recharging water in underground strata. Such water shall be known as water stored underground, but the term shall not include ground water, as defined in section 46-657, which occurs naturally."

This court has held that an overlying property owner has a protected right in the use of ground water, as defined in § 46-657, arising from his ownership of the surface above the ground water. *Sorensen v. Lower Niobrara Nat. Resources Dist.*, 221 Neb. 180, 376 N.W.2d 539 (1985). In *Sorensen*, we held the right of an owner of overlying land to use ground water is an appurtenance constituting property protected by the

Constitution. That right to use water beneath one's land, however, is clearly not unfettered. Nebraska has developed a rule for ground water based on reasonable use and correlative rights. In *Sorensen* at 188, 376 N.W.2d at 546, we quoted from *Olson v. City of Wahoo*, 124 Neb. 802, 248 N.W. 304 (1933), as follows:

> "[T]he owner of land is entitled to appropriate subterranean waters found under his land, but he cannot extract and appropriate them in excess of a reasonable and beneficial use upon the land which he owns, especially if such use is injurious to others who have substantial rights to the waters, and if the natural underground supply is insufficient for all owners, each is entitled to a reasonable proportion of the whole . . . ."

In their brief at 17, appellants state, "The right to use groundwater establishes the right to use underground storage for groundwater." The protected right of landowners is the right to the use of the ground water, and does not reach the ownership of the water itself. Nebraska's ground water is itself publicly owned. *State ex rel. Douglas v. Sporhase*, 208 Neb. 703, 305 N.W.2d 614 (1981), *rev'd on other grounds* 458 U.S. 941, 102 S. Ct. 3456, 73 L. Ed. 2d 1254 (1982). Ground water is owned by the public, and the only right held by an overlying landowner is in the use of the ground water. The right is recognized by statute. Section 46-656 provided in part, at the time of the hearing in this case, "Every landowner shall be entitled to a reasonable and beneficial use of the ground water underlying his or her land subject to the provisions of Chapter 46, article 6, and the correlative rights of other landowners when the ground water supply is insufficient for all users." Appellants urge that the right to use the ground water gives rise to the exclusive right to use the storage space, that the storage space is theirs, and that "the recognition of incidental underground storage" constitutes an unconstitutional taking of their property. We disagree. We are here concerned with two general classifications of water existing beneath the ground: (1) ground water, as defined in § 46-657, which occurs naturally, and (2) water which has accumulated incidentally underground as a result of seepage from manmade facilities.

Section 46-226.01 provides:

> Any person having an approved perfected appropriation may file with the department an application for recognition of incidental underground water storage associated with such appropriation on a form prescribed and furnished by the department without cost. Upon receipt of an application, the department shall proceed in accordance with rules and regulations adopted and promulgated by the department.

That legislative enactment does not purport to have the director of DWR authorize any taking of an interest in land, but only sets out a procedure for recognizing an appropriator's interest in water incidentally stored underground, if authorized.

There was no evidence before the director as to any harm resulting to appellants' lands from that recognition. Appellants have not shown that § 46-226.01 amounts to an unconstitutional taking without just compensation. A statute cannot deprive a person of property unless it prevents him from doing an act which he desires to do or diminishes the enjoyment or profit which he would otherwise derive from his property. 16A C.J.S. *Constitutional Law* § 506 (1984). Appellants in this case have presented no evidence which indicates that § 46-226.01 interferes with the use of their property. Absent such a showing, appellants have no standing to assert the unconstitutionality of the statute as taking their property. *Ritums v. Howell*, 190 Neb. 503, 209 N.W.2d 160 (1973); *Tyler v. Judges of Court of Registration*, 179 U.S. 405, 21 S. Ct. 206, 45 L. Ed. 252 (1900).

Appellants' rights in the use of the "ground water" (within the meaning of § 46-657) under their lands are not affected. The calculation of the amount of that water is now more difficult, but clearly can be made. Indeed, as set out above, the calculation of the amount of water incidentally stored in this case was based on establishing the level of § 46-657 ground water before incidental storage began after the construction of appellee's facilities, which eventually resulted in the § 46-226.01 "underground water storage."

Section 46-226.01 is concerned with water for use and is constitutional in that it recognizes incidental underground water storage associated with a proper appropriation and, as

such, complies fully with the intent of Neb. Const. art. XV, § 4, and does not conflict with other sections of the Nebraska Constitution.

Appellants further argue that § 46-226.01 is an unconstitutional delegation of legislative authority and that it does not contain adequate legal standards to govern the director's review of an application. We find no merit in this claim. We have held that where the Legislature has provided reasonable limitations and standards for carrying out the delegated duties, no unconstitutional delegation of legislative authority exists. *Mann v. Wayne County Board of Equalization*, 186 Neb. 752, 186 N.W.2d 729 (1971). Section § 46-226.02 sets out specific conditions which must be met before the director may approve an application, where it provides, in part:

(a) The rate, quantity, or time of surface water diversion shall not be increased from that approved for the original appropriation;

(b) If the water stored or to be stored underground will be used for irrigation purposes, the director may approve the service of additional amounts of land or different lands not identified to be served with facilities included under the original appropriation, if the director determines that the change is in the public interest, and that any interference with the rights of senior appropriators as a result of such change is unavoidable and not material;

(c) The priority date shall remain the same as that of the original appropriation; and

(d) When the application is for recognition of incidental underground water storage, such stored water is being withdrawn or is otherwise being used for beneficial purposes.

(2) For an application filed pursuant to section 46-226.01, the burden shall be on the applicant to prove that underground water storage has occurred.

(3) The director may grant the application in a modified or reduced form, if required by the public interest, and may impose such other reasonable conditions as deemed

appropriate to protect the public interest.

(4) The director's order of approval shall specify:

(a) The source of the water stored or to be stored underground;

(b) The underground water storage method; and

(c) A description of the area served or to be served by the water stored underground.

In addition, Neb. Rev. Stat. § 46-209 (Reissue 1984) gives DWR jurisdiction "over all matters pertaining to water rights for irrigation, power, or other useful purposes . . . ." The Legislature has recognized the expertise and experience needed to determine the difficult questions presented in the overall water situation in this state when it required, by Neb. Rev. Stat. § 46-701 (Reissue 1984), that the director of DWR be a professional engineer with at least 5 years' experience in a position of responsibility in irrigation work.

This court has recognized the difficulties inherent in requiring the Legislature to spell out each standard in complex fields in areas where expanding technology and complex theories daily change. In *State ex rel. Douglas v. Nebraska Mortgage Finance Fund*, 204 Neb. 445, 465, 283 N.W.2d 12, 24 (1979), we stated:

The question of how far the Legislature should go in filling in the details of the standards which an administrative agency is to apply raises large issues of policy in which the Legislature has a wide discretion, and the court should be reluctant to interfere with such discretion. Such standards in conferring discretionary power upon an administrative agency must be reasonably adequate, sufficient, and definite for the guidance of the agency in the exercise of the power conferred upon it and must also be sufficient to enable those affected to know their rights and obligations. . . . The modern tendency is to be more liberal in permitting grants of discretion to an administrative agency in order to facilitate the administration of laws as the complexity of economic and governmental conditions increases.

Similarly, in *Anderson v. Tiemann*, 182 Neb. 393, 401-02, 155 N.W.2d 322, 328 (1967), we stated: "Delegation of

legislative power is most commonly indicated where the relations to be regulated are highly technical or where regulation requires a course of continuous decision."

Section 46-226.01 does provide that after receiving an application, DWR "shall proceed in accordance with rules and regulations adopted and promulgated" by DWR. The fact that all the standards are not specifically listed in § 46-226.01 does not require a finding of unconstitutional delegation of authority. Standards which guide an administrative agency need not all be embodied in one statute, but may be found in others. The conditions found in § 46-226.02, when taken with the broad statutory authority granted to the DWR over the use and appropriation of water within the state (see § 46-209), provide for adequate standards governing the director's review of applications such as Application U-2. We have earlier discussed the burden on appellants to show a statute is unconstitutional, before this court will rule it invalid. In this argument, as before, appellants have failed to overcome the presumption of constitutionality afforded the legislative enactments. Section 46-226.01 is constitutional.

Insofar as appellants contend the director's regulations do not "contain adequate standards," we also determine that that contention is without merit. DWR regulations with regard to this application provided only, in addition to notice to be published, that "[e]ach application shall be accompanied by sufficient hydrologic information to identify the extent and scope of the underground storage and recovery." Neb. Admin. Code tit. 457, ch. 16, art. 001 (1984).

In this day of extraordinarily verbose administrative regulations, we determine it is not appropriate to condemn an administrative director in this case for saying too little. We determine that the DWR regulations are adequate to inform an applicant and possible objectors of the issues before the director. In addition to the statutory standards set out above, an applicant must supply "sufficient hydrologic information" before the application may be approved. Applicant's evidence must reach that standard. In this case, much evidence was presented on that issue. The objectors knew from reading the regulation above that they could defeat the application by

showing that the applicant did not supply sufficient information to permit the director to approve the application. Objectors presented their position by skilled, close cross-examination of applicant's experts and by presenting an expert witness of their own. The DWR regulations, when coupled with the statutory enactments, clearly outlined the legal field of battle and were not unconstitutional.

Appellants' third assignment of error contends that the director erred in recognizing incidental underground water storage occurring prior to the effective date of § 46-226.01. Appellants urge that the statute should be applied prospectively, and not retroactively. A retroactive application, appellants argue, would result in appellants' loss of the right to use the underground storage space beneath their land. The problem here is that the overlying property owners' protected rights are in the use of the water, not in the storage space. Their right to use the water is not being disturbed by the approval of Application U-2.

Appellants rely on *Dell v. City of Lincoln*, 170 Neb. 176, 102 N.W.2d 62 (1960), to support their proposition that a legislative act will operate only prospectively, and not retroactively, unless the legislative intent and purpose that the statute operate retroactively is clearly disclosed. Appellants suggest a reading of § 46-226.01 does not disclose any reference to a retroactive application allowing for recognition of incidental underground storage occurring prior to August 26, 1983, the effective date of the statute. We disagree with appellants' position. We have held that in considering and applying a statute, this court will determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language thereof, considered in its ordinary sense. *Clinchard v. White*, 223 Neb. 139, 388 N.W.2d 477 (1986). While § 46-226.01 does not in and of itself indicate the legislative intention that it be applied retroactively, other sections of the act must be considered. Section 46-226.02 aids in determining the intent of the Legislature. When considering a series or collections of statutes pertaining to a certain subject matter which are in pari materia, they may be conjunctively considered and construed to determine the intent of the Legislature, so that different

provisions of the act are consistent and sensible. *Wounded Shield v. Gunter*, 225 Neb. 327, 405 N.W.2d 9 (1987). Subsections 46-226.02(1)(b) and (4)(a) refer to the recognition of water "stored or to be stored." The plain meaning of that section shows the intent of the Legislature to allow an approval for an application seeking recognition of water stored prior to the effective date of § 46-226.01. Indeed, § 46-226.01 provides that only persons having appropriations can request that incidental storage rights be recognized. Of necessity, the statute contemplates recognizing already existing storage. In addition, Neb. Rev. Stat. § 46-295 (Cum. Supp. 1986) refers to water that "has been, is, and will be" incidentally stored in the underground strata. We hold, then, that when read collectively, it is clear that the intent of the Legislature was to apply the statutes concerning recognition of incidental underground water storage retroactively to include the recognition of incidentally stored water occurring prior to the effective date of those statutes.

Appellants' final assignment of error contends that the director erred in his consideration of Application U-2 by not applying the interbasin transfer statutes, §§ 46-288 and 46-289. Those statutes require that the director of DWR consider certain factors before granting or denying an interbasin transfer of water. Appellants argue that since water is flowing underground from the Platte River basin into the Republican and Little Blue River basins, the director should have applied the interbasin transfer statutes. Section 46-288(3) defines an interbasin transfer as "diversion of water in one river basin and the transportation of such water to another river basin for storage or utilization for a beneficial use." Appellants contend that whenever there is a transportation of water for a beneficial use to another basin, an application for approval of interbasin transfer is required. We agree with appellants' reading of §§ 46-288 and 46-289, in that an application for approval is required before an interbasin transfer takes place. We do not agree with appellants' contention, however, that approval was required in the case at bar. We have previously discussed the basic rule of statutory construction, in that the language of a statute will be given its plain or ordinary meaning. When the

words of the statute are unambiguous, no additional interpretation is necessary. *Midwest Messenger Assn. v. Spire*, 223 Neb. 748, 393 N.W.2d 438 (1986). Sections 46-288 and 46-289 are concerned with interbasin transfers. This term is clearly defined in § 46-288(3) as "the diversion of water in one river basin and the transportation of such water to another river basin for storage or utilization for a beneficial use." While Application U-2 appears to include an interbasin transfer, in that water is flowing from the Platte River basin into the Republican and Little Blue River basins, we agree with the director in his finding that movement of water through subsurface strata as has occurred in this case, resulting in the formulation of the underground mound, was not the sort of interbasin transfer defined in § 46-288. That section includes the terms "diversion" and "transportation." The plain meaning of § 46-288 is that the director must consider interbasin transfers of water if an affirmative act to transport from one basin to another has been shown. The interbasin transfer occurring in the case at bar is done naturally and will occur whether or not an application under the interbasin transfer statutes is approved. Tri-County has not diverted or transported water as defined in § 46-288(3). No purposeful act is the cause of the flow of water from one basin to another. We hold, then, that the director did not err in not applying the interbasin transfer statutes before giving his approval to Application U-2.

We determine that the director has not erred as alleged by appellants. The order of the director of DWR approving Application U-2 is affirmed.

AFFIRMED.

KRIVOSHA, C.J., not participating.