REQUESTED BY: Governor E. Benjamin Nelson
The Central Nebraska Public Power and Irrigation District (Central) holds a valid storage right for storage of two million acre feet of water from the North Platte River in Lake McConaughy. Central, in turn, makes this water available to farmers in the area through its storage and delivery system. In the late 1970's, Central rehabilitated two of its canal delivery systems, and, in the course of that rehabilitation, some farm acres were removed from the delivery system and others were added without proper assignment of the water rights involved. The net result of this situation is that approximately 33,000 acres of farm land in Gosper, Phelps and Kearney Counties which have long been irrigated from Central's system now have no current water storage use rights for delivery of irrigation water from Lake McConaughy, even though those acres have received water in the past.
To rectify this problem, Central has filed water right applications with the Nebraska Department of Water Resources (DWR) seeking authority to continue to use water stored in Lake McConaughy to irrigate the 33,000 acres in question. DWR has followed its normal procedures with respect to those applications, and has issued notice of the applications and scheduled a hearing for consideration of the permanent water rights involved. Because of the length of time associated with the permanent application process, there is some uncertainty about availability of water supplies for the 33,000 acres for the 1992 season. To solve this immediate problem, you are apparently considering the possibility of issuing a temporary use permit for the delivery of surface water. You have therefore asked us, ". . . may DWR issue a temporary use permit to Central for the 1992 irrigation season pending a long-term determination as to Central's water rights applications?" We have reviewed the pertinent statutes and rules and regulations, and we believe DWR does have the necessary authority to issue such a temporary use permit.
Chapter 20 of DWR's Rules for Surface Water, issued in October, 1989, provides as follows:
 001 WHEN ISSUED. Temporary use permits may be issued when surface water supplies are needed on a temporary basis. The permit does not grant access to the surface water source and does not provide a permanent water right.
 002 APPLICATION. The application form and the fee shall be the same as that when applying for an appropriation.
 003 EXPIRATION. A temporary permit will expire one year from the date the permit was issued and may be dismissed prior to that date at the request of the applicant.
 004 ADMINISTRATION. Water supplies shall be allocated to temporary permits in the same manner as appropriations during times of shortage.
The initial question to be considered is whether that language allows a temporary-use permit to be issued under the circumstances described above.
Generally, the rules and regulations of an administrative agency are subject to the same principle of construction as those principles applying to the construction of statutes 73 C.J.S. Public AdministrativeLaw and Procedures § 94. In that regard, absent persuasive reason to the contrary or a contrary administrative interpretation, courts will give the words used in a rule or regulation their ordinary meaning. Id.
It seems to us that the provisions of Chapter 20 quoted above dealing with temporary use permits are quite broad and general. Given their ordinary meaning, they would allow the issuance of a temporary water use permit in the present instance because surface water supplies are certainly "needed on a temporary basis." As a result, we believe that Chapter 20 of the Rules for Surface Water do apply to the situation involving the temporary request by Central, and do allow issuance of a temporary permit.
We also understand that there is an additional question pertaining to the issuance of a temporary water use permit for the acres affected by Central's application process. Specifically, can DWR issue such a temporary water use permit without a lengthy hearing process, or must a hearing process and other administrative procedures precede the issuance of a temporary permit? We believe that DWR does have authority to issue a temporary water use permit here pending a hearing and without a lengthy pre-issuance administrative proceeding.
We have reviewed the Rules for Surface Water issued by DWR together with the DWR Rules of Practice and Procedure. There is nothing in those rules which specifically mandates a hearing prior to the issuance of a temporary water use permit under Chapter 20. On the other hand, we believe the statutes detailing the authority of DWR allow the issuance of such a permit pending a hearing and other administrative procedures.
Neb.Rev.Stat. § 46-209 (Reissue 1988) provides, in pertinent part:
 The Department of Water Resources is given jurisdiction over all matters pertaining to water rights for irrigation, power, or other useful purposes, except as such jurisdiction is specifically limited by statute. Such department shall adopt rules governing matters coming before it. It may refuse to allow any water to be used by claimants until their rights have been determined and made of record. It may request information relative to irrigation and water power works from any and all county, irrigation, or power officers and from any other person or persons. It shall have public hearings on complaints, petitions, or applications in connection with any of the above matters. Such hearings may be had at the time and place designated by the department.
Obviously, this statute grants the Department of Water Resources broad authority over the use and appropriation of water within the State. In re Application U-2, 226 Neb. 594, 413 N.W.2d 290 (1987). More importantly, the third sentence of § 46-209 provides, "[DWR] may
refuse to allow water to be used by claimants until their rights have been determined and made a record." (Emphasis added). When used in a statute, the word "may" is generally permissive and discretionary rather than mandatory. In re Application A-15738, of the Hitchcock and RedWillow Irrigation District, 226 Neb. 146, 410 N.W.2d 101 (1987); Roy v.Bladen School District No. R-31 of Webster County, 165 Neb. 170,84 N.W.2d 119 (1957). Therefore, DWR has the discretion to refuse to allow claimants to use water until their rights have been determined. It seems to us that this statutory discretion necessarily implies the converse authority; i.e., DWR could allow claimants to use water pending a final determination of their rights through the administrative process. This discretion, in turn, would allow DWR to issue a temporary water use permit in the present situation pending a final determination by the department.
Our view that DWR can issue a temporary use permit in the present circumstances which preserves the status quo pending a final determination of water rights is further supported by the fact that DWR performs a quasi-judicial function when it grants appropriations of public waters. Hickman v. Loup River Power District, 173 Neb. 428, 113 N.W.2d 617
(1962). Much as a court may, based upon the equities, grant a temporary injunction preserving the status quo of a particular situation pending further adjudication, we believe that DWR can issue a temporary permit pending further hearings when, as here, such a temporary permit would simply allow parties to continue to use water sources that have been available to them in the past.
We would also note that issuance of a temporary water use permit pending a further hearing on the final determination of water rights and water appropriations complies with that portion of § 49-209 which states that DWR "shall have public hearings on complaints, petitions or applications." In such an instance, DWR would ultimately comply with that portion of the statute by conducting the required public hearing on the application at issue.
Finally, we also believe that a temporary water use permit can be issued here without the consultation with the Nebraska Game and Parks Commission contemplated by the Non-game and Endangered Species Conservation Act, Neb.Rev Stat. § 37-430 et seq. (Reissue 1988). That act provides that no State department may take any action which might jeopardize the continued existence of endangered species without consulting with the Nebraska Game and Parks Commission. Little BlueNatural Resources District v. Lower Platten North Natural ResourcesDistrict, 210 Neb. 862, 317 N.W.2d 726 (1982). However, issuance of a temporary water use permit here will simply preserve the status quo and will allow the parties to continue to use water which they have had available in the past. No "action" will be taken by DWR because there will not be any change in the current water appropriations situation.
We share your concern for the dilemma of those farmers who have used Central's water in the past and who could be adversely affected by the uncertainty inherent in a long water rights application process. We also agree with your assertion that ". . . a solution must be found which will ensure delivery of irrigation water for the 1992 season." We believe that DWR does have the authority, if it chooses, to issue a temporary water use permit that will allow farmers of the acres in question to use water for the 1992 season pending, final adjudication of their water rights as described in Central's application.
Sincerely yours,
 DON STENBERG Attorney General
01-08-6