GREGORY L. BAMFORD ET AL., APPELLANTS, V. UPPER REPUBLICAN NATURAL RESOURCES DISTRICT, A BODY POLITIC, APPELLEE.

512 N.W.2d 642

Filed March 4, 1994.   Nos. S-92-562, S-92-563.

Richard A. Dudden, of Padley & Dudden, P.C., and Firmin Q. Feltz for appellants.

Terry E. Savage for appellee.

Steven G. Seglin, of Crosby, Guenzel, Davis, Kessner & Kuester, for amicus curiae Nebraska Association of Resources Districts.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, FAHRNBRUCH, and LANPHIER, JJ., and GRANT, J., Retired.

BOSLAUGH, J.

In these two cases which were consolidated for briefing and argument in this court, the plaintiffs-appellants, Gregory L. Bamford, Bamford Partnership, Dan Adler, and Robin Roth, sought to prevent the enforcement of a cease and desist order issued by defendant-appellee, Upper Republican Natural Resources District (URNRD). URNRD issued its cease and desist order on March 12, 1992, to prevent the appellants from withdrawing ground water from nine wells until the issuance of an additional allocation permitting further withdrawals. In response, on March 26, 1992, the appellants filed a petition in case No. S-92-562, pursuant to Neb. Rev. Stat. § 84-917 (Cum. Supp. 1992), seeking a review of URNRD's issuance of the cease and desist order. On that date, the appellants also filed a separate petition in case No. S-92-563 seeking an injunction enjoining URNRD from enforcing its March 12 cease and desist order. In its answer to the appellants' petition for injunctive relief, URNRD filed a counterclaim seeking an injunction enjoining the appellants from withdrawing ground water until the appellants' wells were granted another allocation of ground water.

Following a trial on the action for injunctive relief, the district court denied the injunction sought by the appellants and granted the injunction sought by URNRD. In addition, after a review, in accordance with § 84-917(5), of URNRD's action in issuing the March 12 cease and desist order, the district court determined that the cease and desist order was properly issued and dismissed the petition which the appellants had filed pursuant to § 84-917. The appellants now appeal the decisions of the district court.

Before reviewing the appellants' assignments of error, it is helpful to provide some minimal background. We first note that center-pivot irrigation systems have been installed on each of the nine wells which are involved in this case. Appellant Gregory Bamford is the owner of land irrigated by five wells; those five tracts or "circles" are farmed by his tenant, appellant Roth. Land irrigated by the other four wells is owned by appellant Bamford Partnership; those four circles are farmed by appellant Adler.

The land irrigated by the appellants' nine wells falls within the jurisdiction of URNRD and is within an area which, in 1977, was designated a ground water "control area." See Neb. Rev. Stat. § 46-658 (Reissue 1988). Although § 46-658(5) provides procedures for modification of a control area designation, the control area encompassing the appellants' wells remains unchanged. Consequently, the withdrawal of ground water from the appellants' wells is subject to the limitations imposed by URNRD. See Neb. Rev. Stat. § 46-666 (Reissue 1988).

In 1978, URNRD adopted rules regarding the withdrawal of ground water from wells within the district, and such withdrawals have been subject to regulation by URNRD since that time. In 1988, URNRD adopted an order allocating 75 acre-inches of ground water per irrigated acre for the 5-year period commencing January 1, 1988, and ending December 31, 1992. (Neb. Rev. Stat. § 46-657 (Reissue 1988) defines an acre-inch as "the amount of water necessary to cover an acre of land one inch deep.") Thus, in 1988, URNRD issued an allocation of 15 acre-inches per year for 5 years, but irrigators would be allowed to withdraw in excess of 15 acre-inches per year for each irrigated acre, so long as total withdrawals during the 5-year period did not exceed 75 acre-inches per irrigated acre.

In determining the total allocation available to the appellants during the 5-year period, URNRD and the appellants agreed to a "pooling" of the appellants' nine wells. Under this pooling arrangement, allocations of water which were not withdrawn from any of the nine wells could be withdrawn from any of the other nine wells. Thus, withdrawals from any single well could

exceed the 75-acre-inch allocation, but total withdrawals from all nine wells could not exceed the 5-year allocation of 75 acre-inches per irrigated acre. Nevertheless, at the end of 1991, i.e., the fourth year of the allocation period, the appellants' withdrawals of ground water from the nine pooled wells had exceeded the 75-acre-inch allocation by approximately 12 acre-inches per irrigated acre. While the four wells owned by Bamford Partnership had a remaining allocation of approximately 25 acre-inches per irrigated acre at the end of 1991, the five wells owned by Gregory Bamford had exceeded their allocations by approximately 41 acre-inches per irrigated acre, thus resulting in the 12-inch "deficit" for the nine pooled wells.

Because the appellants' nine pooled wells had, at the end of 1991, withdrawn all of the ground water allocated to those wells for the 5-year period ending December 31, 1992, URNRD conducted a hearing to determine whether a cease and desist order should be issued due to the appellants' withdrawals of ground water in excess of the amount allocated. Appellant Gregory Bamford testified at this February 11, 1992, hearing. Following the hearing, URNRD issued its March 12, 1992, cease and desist order to prevent further withdrawal of ground water until the issuance of another allocation. Appellants now contend that in upholding URNRD's cease and desist order, the district court erred in (1) finding that URNRD's issuance of the cease and desist order was not arbitrary and capricious, (2) finding that the appellants' nine wells were pooled, (3) denying appellants the right to use water underlying their land when evidence failed to show that the underground water supply was insufficient for all other water users, (4) finding that the Nebraska Ground Water Management and Protection Act was constitutional, and (5) finding that the appellants were not entitled to compensation for the taking of their property.

In reviewing the appellants' assignments of error in connection with their petitions, we first consider whether issues are presented which we may properly decide. The appellants' petitions primarily sought injunctive relief and a reversal of URNRD's issuance of the cease and desist order. However, it is apparent that the cease and desist order affected the appellants

during 1992 only. The record shows that the appellants were entitled to and would have been issued an additional allocation of ground water in 1993, and statements by the appellants' counsel made during oral argument indicate that the cease and desist order was effective during 1992 only.

In *Koenig v. Southeast Community College*, 231 Neb. 923, 925-26, 438 N.W.2d 791, 794 (1989), this court stated:

> At the heart of this action is the request for an injunction. The purpose of an injunction is the restraint of actions which have not yet been taken. Remedy by injunction is generally preventative, prohibitory, or protective, and equity will not usually issue an injunction when the act complained of has been committed and the injury has been done. [Citations omitted.] In this case the matter is fait accompli, and the action has been taken. No court could now prohibit what has already taken place . . . . As to injunction, the case has become moot.

As in *Koenig*, issues relating only to the cease and desist order which affected the appellants during 1992 have become moot; the matter is a fait accompli. Thus, we do not address the appellants' contention that URNRD's issuance of the cease and desist order was arbitrary and capricious. Nevertheless, we note that the evidence is uncontroverted that at the end of 1991, the fourth year of the 5-year allocation period, the appellants' withdrawals of ground water from the nine pooled wells had exceeded the amount allocated. Similarly, while the record does support the district court's determination that the nine wells were pooled, the appellants' assignment of error regarding the pooling of the nine wells is relevant only with respect to the moot issue of the propriety of URNRD's cease and desist order.

Although the passage of time has rendered moot those issues relating only to issuance of URNRD's cease and desist order, we are cognizant of additional language contained in *Koenig* which states:

> There is an exception to the general rule regarding moot questions which should be examined. That exception applies to cases involving matters of public interest. . . . The public interest exception to the rule precluding consideration of issues on appeal due to mootness requires

a consideration of the public or private nature of the question presented, desirability of an authoritative adjudication for future guidance of public officials, and the likelihood of future recurrence of the same or a similar problem.

*Id.* at 926-27, 438 N.W.2d at 795. We now address the appellants' remaining assignments of error, as those assignments of error involve matters of public interest likely to arise in future similar cases.

The appellants contend that the district court erred in denying them the right to use water underlying their land when evidence failed to show that the underground water supply was insufficient for all other water users. This contention is apparently based upon Nebraska's common law of ground water, i.e.: " 'The owner of land is entitled to appropriate subterranean waters found under his land, but . . . if the natural underground supply is insufficient for all owners, each is entitled to a reasonable proportion of the. whole . . . .' " *Sorensen v. Lower Niobrara Nat. Resources Dist.*, 221 Neb. 180, 188, 376 N.W.2d 539, 546 (1985).

At the February 11, 1992, hearing conducted by URNRD, and also at the trial conducted by the district court with respect to the appellants' petition for injunctive relief, the appellants did present evidence relating to the available supply of water in the Ogallala aquifer, from which water was being withdrawn, and the effect of such withdrawals upon other water users. However, such evidence was not relevant in this case, because the question whether conditions existed requiring the regulation of the withdrawal of ground water from the appellants' wells (i.e., the question whether the underground water supply was sufficient for all users) was settled when the Director of Water Resources, pursuant to § 46-658, designated a control area encompassing appellants' nine wells. That designation effectively established that the underground water supply was insufficient for all owners using that supply. Furthermore, the record indicates that the order designating the control area was entered on August 1, 1977, and it is apparent no petition was filed seeking a review of that order within the 30 days specified by § 84-917. See *B. T. Energy Corp. v. Marcus*, 222 Neb. 207,

382 N.W.2d 616 (1986). Nor has the control area designation been modified pursuant to § 46-658(5). Thus, the question whether the underground water supply was insufficient for all water users was not an issue properly before either the district court or URNRD at its February 11, 1992, hearing.

The appellants also assert that they are entitled to a ground water allocation greater than the 75-acre-inch 5-year allocation granted to all wells regulated by URNRD. Again, however, the time has passed to challenge that order. The record shows that URNRD adopted the 75-acre-inch order in January or February 1988, and the appellants apparently did not timely seek a review of that URNRD decision. Furthermore, the appellants do not contend and the record does not suggest that URNRD failed to comply with the notice and public hearing requirements of Neb. Rev. Stat. § 46-663.01 (Reissue 1988) when it adopted the 75-acre-inch allocation for the 5-year period ending December 31, 1992. The 75-acre-inch allocation having been previously adopted and not challenged, at its February 11 hearing URNRD was left to consider only whether the appellants' withdrawals of water had exceeded the allocated amount and whether a cease and desist order should therefore be issued. URNRD then determined that the appellants had exceeded their 75-acre-inch allocation, and in accordance with Neb. Rev. Stat. § 46-663(5) (Reissue 1988) and its own procedural rules, URNRD issued its cease and desist order.

The appellants next challenge the constitutionality of statutory provisions authorizing URNRD's issuance of a cease and desist order. In doing so, the appellants state that the Nebraska Ground Water Management and Protection Act is both vague and overbroad. See, also, *State v. Copple*, 224 Neb. 672, 401 N.W.2d 141 (1987). However, the argument which the appellants articulate presents only a vagueness question in the form of an assertion that the applicable statutory provisions are an unconstitutional delegation of legislative authority. As stated in *Kwik Shop v. City of Lincoln*, 243 Neb. 178, 182-83, 498 N.W.2d 102, 106 (1993):

> It is axiomatic that statutes are afforded a presumption of constitutionality, and the unconstitutionality of a statute must be clearly established before it will be declared void.

*State v. Kipf*, 234 Neb. 227, 450 N.W.2d 397 (1990). Even when a law is constitutionally suspect, a court will attempt to interpret it in a manner consistent with the Constitution. See *id*. See, also, *State ex rel. Wright v. Pepperl*, 221 Neb. 664, 380 N.W.2d 259 (1986). The burden of establishing the unconstitutionality of a statute is on the one attacking its validity. *In re Guardianship and Conservatorship of Sim*, 225 Neb. 181, 403 N.W.2d 721 (1987).

When a legislative enactment is challenged on vagueness grounds, the issue is whether the two requirements of procedural due process are met: (1) adequate notice to citizens and (2) adequate standards to prevent arbitrary enforcement. *Kolender v. Lawson*, 461 U.S. 352, 103 S. Ct. 1855, 75 L. Ed. 2d 903 (1983); *City of Lincoln v. ABC Books, Inc.*, 238 Neb. 378, 470 N.W.2d 760 (1991). See, also, *Grayned v. City of Rockford*, 408 U.S. 104, 92 S. Ct. 2294, 33 L. Ed. 2d 222 (1972); *State v. Fellman*, 236 Neb. 850, 464 N.W.2d 181 (1991). "In other words, due process requires that an enactment supply (1) a 'person of ordinary intelligence a reasonable opportunity to know what is prohibited' and (2) 'explicit standards for those who apply [it].' " *ABC Books, Inc.*, 238 Neb. at 382, 470 N.W.2d at 764 (quoting *Grayned, supra*).

*In re Application U-2*, 226 Neb. 594, 413 N.W.2d 290 (1987), presented an issue similar to the issue raised by the appellants. The court stated:

Appellants . . . argue that § 46-226.01 is an unconstitutional delegation of legislative authority and that it does not contain adequate legal standards to govern the director's review of an application. We find no merit in this claim. We have held that where the Legislature has provided reasonable limitations and standards for carrying out the delegated duties, no unconstitutional delegation of legislative authority exists. *Mann v. Wayne County Board of Equalization*, 186 Neb. 752, 186 N.W.2d 729 (1971). Section § [sic] 46-226.02 sets out specific conditions which must be met before the director may approve an application . . . .

In addition, Neb. Rev. Stat. § 46-209 (Reissue 1984) gives DWR jurisdiction "over all matters pertaining to water rights for irrigation, power, or other useful purposes . . . ." The Legislature has recognized the expertise and experience needed to determine the difficult questions presented in the overall water situation in this state when it required, by Neb. Rev. Stat. § 46-701 (Reissue 1984), that the director of DWR be a professional engineer with at least 5 years' experience in a position of responsibility in irrigation work.

This court has recognized the difficulties inherent in requiring the Legislature to spell out each standard in complex fields in areas where expanding technology and complex theories daily change. In *State ex rel. Douglas v. Nebraska Mortgage Finance Fund*, 204 Neb. 445, 465, 283 N.W.2d 12, 24 (1979), we stated:

"The question of how far the Legislature should go in filling in the details of the standards which an administrative agency is to apply raises large issues of policy in which the Legislature has a wide discretion, and the court should be reluctant to interfere with such discretion. Such standards in conferring discretionary power upon an administrative agency must be reasonably adequate, sufficient, and definite for the guidance of the agency in the exercise of the power conferred upon it and must also be sufficient to enable those affected to know their rights and obligations. . . . The modern tendency is to be more liberal in permitting grants of discretion to an administrative agency in order to facilitate the administration of laws as the complexity of economic and governmental conditions increases."

Similarly, in *Anderson v. Tiemann*, 182 Neb. 393, 401-02, 155 N.W.2d 322, 328 (1976), we stated: "Delegation of legislative power is most commonly indicated where the relations to be regulated are highly technical or where regulation requires a course of continuous decision."

*In re Application U-2*, 226 Neb. at 607-09, 413 N.W.2d at 299-300.

We now turn to the statutory provisions bearing upon the issuance of the March 12 cease and desist order, first noting that with respect to the following quoted sections, § 46-657 provides requisite definitions. That section states:

As used in the Nebraska Ground Water Management and Protection Act . . .

(6) District shall mean a natural resources district operating pursuant to Chapter 2, article 32;

(7) Director shall mean the Director of Water Resources;

. . . .

(14) Board shall mean the board of directors of a district . . . .

Section 46-658, further, provides:

An area may be designated a control area by the director following a hearing initiated in accordance with subsection (3) of this section if it shall be determined, following evaluation of relevant hydrologic and water quality data, history of developments, and projection of effects of current and new development, that development and utilization of the ground water supply has caused or is likely to cause within the reasonably foreseeable future the existence of either of the following conditions:

(a) An inadequate ground water supply to meet present or reasonably foreseeable needs for beneficial use of such water supply; or

(b) Dewatering of an aquifer, resulting in a deterioration of the quality of such ground water sufficient to make such ground water unsuitable for the present purposes for which it is being utilized.

(2) When determining whether to designate a control area because of the existence of any of the conditions listed in subsection (1) of this section, the director's considerations shall include, but not be limited to, whether conflicts between ground water users are occurring or may be reasonably anticipated or whether ground water users are experiencing or will experience within the foreseeable future substantial economic hardships as a direct result of current or anticipated

ground water development or utilization.

(3) A hearing to designate a control area may be initiated by a district whenever it has information, sufficient in the opinion of the board of directors, to require that any portion of such district should be designated as a control area. . . .

(4)(a) Within thirty days after a hearing has been initiated pursuant to subsection (3) of this section, the director shall consult with the district and fix a time and place for a public hearing to consider the information supplied and to hear any other evidence. . . .

(b) At the hearing, all interested persons shall be allowed to appear and present testimony. The Conservation and Survey Division of the University of Nebraska, the Nebraska Natural Resources Commission, and the Department of Environmental Control shall offer as evidence any information in their possession which they deem relevant to the purposes of the hearing. After the hearing and after any studies or investigations conducted by or on behalf of the director as he or she deems necessary, the director shall determine whether a control area shall be designated. If the director determines that no control area shall be established, he or she shall issue an order declaring that no control area shall be designated.

(c) If the director determines that a control area shall be established, he or she shall consult with such relevant state agencies named in subdivision (b) of this subsection and with the district or districts affected and determine the boundaries of the control area, taking into account the considerations enumerated in subsection (1) of this section, the effect on political subdivisions, and the socioeconomic and administrative factors directly affecting the ability to implement and carry out local ground water management, control, and protection.

In addition, § 46-666 states:

(1) A district in which a control area has been designated pursuant to subsection (1) of section 46-658 shall by order adopt one or more of the following controls for the control area:

(a) It may determine the permissible total withdrawal of ground water for each day, month, or year and allocate such withdrawal among the ground water users;

. . . .

(2) In adopting, amending, or repealing any control authorized by subsection (1) of this section . . . the district's considerations shall include, but not be limited to, whether it reasonably appears that such action will mitigate or eliminate the condition which led to designation of the control or management area, will encourage a high degree of water use efficiency, or will improve the administration of the area.

(3) The adoption, amendment, or repeal of any authorized control in a control area shall be subject to the approval of the director. The director may hold a public hearing to consider testimony regarding the control prior to the issuance of an order approving or disapproving the adoption, amendment, or repeal of the control. . . . In approving the adoption, amendment, or repeal of an authorized control in a control area, the director's considerations shall include, but not be limited to, those enumerated in subsection (2) of this section.

. . . .

(5) If the district determines, following a public hearing conducted pursuant to section 46-665, that depletion or contamination of the ground water supply in the control area or any portion of the control area is so excessive that the public interest cannot be protected solely through implementation of reasonable controls adopted pursuant to subsection (1) of this section, it may, with the approval of the director, close all or a portion of the control area to the issuance of any additional permits for a period of one calendar year. Such areas may be further closed thereafter by a similar procedure for additional one-year periods. . . .

Finally, § 46-663 states:

Regardless of whether or not any portion of a district has been designated as a control, management, or special ground water quality protection area, in order to administer and enforce the Nebraska Ground Water

Management and Protection Act and to effectuate the policy of the state to conserve ground water resources, a district may:

. . . .

(5) Issue cease and desist orders, following ten days' notice to the person affected stating the contemplated action and in general the grounds for the action and following reasonable opportunity to be heard, to enforce any of the provisions of the act or of orders or permits issued pursuant to it, to initiate suits to enforce the provisions of orders issued pursuant to the act, and to restrain the construction of illegal wells or the withdrawal or use of water from such wells.

We find that the above-cited statutes provide adequate notice to citizens and adequate enforcement standards regarding the establishment of control areas, the adoption of rules to control water usage, and the issuance of cease and desist orders to prevent violations of such rules. As in *In re Application U-2*, 226 Neb. 594, 610, 413 N.W.2d 290, 301 (1987), the applicable statutory provisions "clearly outlined the legal field of battle and [are] not unconstitutional."

We finally address the appellants' contention that the issuance of a cease and desist order in this case is tantamount to a regulatory "taking," and their claim that the district court therefore erred in failing to award them compensation as a result of the issuance of the cease and desist order. With respect to this issue, we point out that the issue of compensation was, in fact, not before the district court, since the appellants' petitions sought only a review of the action of URNRD in issuing the cease and desist order and an injunction which would have prevented the enforcement of that order. The appellants' petition did ask the district court to overturn URNRD's cease and desist order on the ground that the statute under which it was authorized and issued resulted in an unconstitutional taking of property without just compensation. In that regard, we note that there is no constitutional limitation on the right to take private property for public use under the power of eminent domain, except as to the right to just compensation. See *Hammer v. Department of Roads*, 175 Neb. 178, 120 N.W.2d

909 (1963). However, the appellants' petitions did not seek such compensation, and the appellants therefore failed to properly place that issue before the district court. In any event, however, the appellants' analysis fails to support their takings claim.

The appellants attempt to lay a foundation for their takings claim by citing language from *Sorensen v. Lower Niobrara Nat. Resources Dist.*, 221 Neb. 180, 376 N.W.2d 539 (1985). In *Sorensen*, 221 Neb. at 191-92, 376 N.W.2d at 548, this court stated that "the right of an owner of overlying land to use ground water is an appurtenance constituting property protected by Neb. Const. art. I, § 21: 'The property of no person shall be taken or damaged for public use without just compensation therefor.' " However, ground water, as defined in § 46-657, is owned by the public, and the only right held by an overlying landowner is in the use of the ground water. *In re Application U-2, supra.* Furthermore, placing limitations upon withdrawals of ground water in times of shortage is a proper exercise of the State's police power. See *Sporhase v. Nebraska ex rel. Douglas*, 458 U.S. 941, 102 S. Ct. 3456, 73 L. Ed. 2d 1254 (1982).

Quoting *Olson v. City of Wahoo*, 124 Neb. 802, 248 N.W. 304 (1933), *State ex rel. Douglas v. Sporhase*, 208 Neb. 703, 705, 305 N.W.2d 614, 617 (1981), *rev'd on other grounds* 458 U.S. 941, 102 S. Ct. 3456, 73 L. Ed. 2d 1254 (1982), recites Nebraska's common law of ground water:

"The . . . rule is that the owner of land is entitled to appropriate subterranean waters found under his land, but he cannot extract and appropriate them in excess of a reasonable and beneficial use upon the land which he owns, especially if such use is injurious to others who have substantial rights to the waters, and if the natural underground supply is insufficient for all owners, each is entitled to a reasonable proportion of the whole . . . ."

Under this rule, when the underground water supply is sufficient for all users, a landowner is entitled to reasonable and beneficial use of that supply. Apparently with that in mind, the appellants point to language in *Prather v. Eisenmann*, 200 Neb. 1, 7, 261 N.W.2d 766, 770 (1978), stating: "Under the reasonable use doctrine, two neighboring landowners . . . can

withdraw all the supply he [sic] can put to beneficial and reasonable use. What is reasonable is judged solely in relationship to the purpose of such use on the overlying land." The appellants then conclude that they were entitled to withdraw as much water as was required to use their land as they chose—in this case, to grow a corn crop.

The appellants' reliance on *Prather* is improvident, for the court specifically found that under the circumstances of that case, the water supply was sufficient for all users. Contrarily, as discussed previously, the designation of a control area which included the appellants' irrigated land established that in this instance the available supply of water was insufficient for all users.

In addition, while the common-law rule for ground water was adopted in *Olson, supra*, the Legislature has the power to determine public policy with regard to ground water and can alter the common law governing the use of ground water. See *Sorensen, supra*. See, also, *Sporhase, supra*.

Finally, the appellants state that they were deprived of all economic use of their land during 1992 and argue that under *Lucas v. South Carolina Coastal Council*, _____ U.S. _____, 112 S. Ct. 2886, 120 L. Ed. 2d 798 (1992), they were therefore entitled to compensation. In *Lucas*, the Court found that a landowner was entitled to compensation because South Carolina's Coastal Zone Management Act prohibited all economically beneficial use of his land. However, the appellants' assertions in this instance are little more than a claim that because they could not withdraw enough water to grow a corn crop, they were therefore deprived of all economic use of their land. The record here fails to show that the appellants were, in fact, deprived of all economic use of their land in 1992, and, if only for that reason, *Lucas* is inapplicable under the circumstances presented here.

For the reasons stated in the opinion, the appeal in case No. 92-563 is dismissed as moot; the judgment in case No. S-92-562 is affirmed.

JUDGMENT IN NO. S-92-562 AFFIRMED.
APPEAL IN NO. S-92-563 DISMISSED.