In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-1806

BRYANA BIBLE, Individually and on Behalf of the
Proposed Class,

*Plaintiff-Appellant*,

*v.*

UNITED STUDENT AID FUNDS, INC.,

*Defendant-Appellee*.

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 13-CV-00575-TWP-TAB — **Tanya Walton Pratt**, *Judge*.

DECIDED OCTOBER 5, 2015

Before FLAUM, MANION, and HAMILTON, *Circuit Judges*.

On consideration of appellant's petition for rehearing and rehearing en banc, filed on September 1, 2015, no judge in active service has requested a vote on the petition for rehearing en banc, and all judges on the original panel have voted to deny the petition. Accordingly, the petition for rehearing is DENIED.

EASTERBROOK, *Circuit Judge*, concurring in the denial of rehearing en banc. If default on a student loan causes the lender to collect on a federal guaranty, the borrower must pay "reasonable collection costs" to curtail the expense to the Treasury. 20 U.S.C. §1091a(b)(1). A federal regulation none-theless provides that a borrower who signs (and complies with) a "repayment agreement," thus reimbursing the guar-antor, need not add collection costs to the debt. 34 C.F.R. §682.410(b)(5)(ii)(D).

Bryana Bible stopped paying her student loan but later agreed to a rehabilitation program, governed by 34 C.F.R. §682.405, under which she paid $50 a month (not enough to cover even half of the monthly interest) in anticipation that she would eventually resume making full payments, after which the note would be sold to a new private lender. When signing the rehabilitation contract, Bible promised to pay collection costs that could not exceed 18.5% of her loan.[†]

But when the holder of her note sought to recover those costs, Bible replied with this suit characterizing the effort as a form of mail or wire fraud and seeking millions of dollars in damages under RICO, even though the guaranty funds

---

[†] Two paragraphs of the rehabilitation agreement address collection costs. One reads: "Once rehabilitation is complete, collection costs that have been added will be reduced to 18.5% of the unpaid principal and accrued interest outstanding at the time of Loan Rehabilitation. Collec-tion costs may be capitalized at the time of the Loan Rehabilitation by your new lender, along with outstanding accrued interest, to form one new principal amount." The other, appearing immediately above the signature block, reads: "By signing below, I understand and agree that the lender may capitalize collection costs of 18.5% of the outstanding principal and accrued interest upon rehabilitation of my loan(s)."

have not been repaid and the premise of §682.410(b)(5)(ii)(D) has not been fulfilled. She contends that a rehabilitation agreement under §682.405 must be treated the same as a repayment agreement under §682.410 and that, by treating these two programs differently, United Student Aid Funds has committed thousands of federal felonies—at least one per borrower. Bible also contends that United Student Aid Funds must pay damages for breach of contract, even though her original loan agreement and her rehabilitation agreement permit the lender to assess collection costs. Reversing the district court, the panel held that Bible's suit may proceed on both the RICO and contract claims.

Each member of the panel wrote separately. The lead opinion, by Judge Hamilton, concludes that the addition of collection costs to a loan in rehabilitation is forbidden because every "rehabilitation agreement" is a "repayment agreement." Judge Manion, in dissent, concludes that a "rehabilitation agreement" is not a "repayment agreement." The two kinds of agreements are governed by separate regulations, and "rehabilitation" does not produce "repayment" when it doesn't even cover ongoing interest. Judge Flaum saw merit in both of these views and wrote that:

> Judge Manion, in his dissent, makes a strong case for the proposition that the two concepts are separate and distinct, and thus, that the repayment agreement provisions of [34 C.F.R.] §682.410(b)(5)(ii) do not apply to the loan rehabilitation program described in 34 C.F.R. §682.405. Indeed, the Department of Education's website lists "Loan Repayment" and "Loan Rehabilitation" as independent options

for "getting your loan out of default." [Citation omitted.] Moreover, there is no cross-reference or other textual indication in the regulations suggesting that the rehabilitation agreements described in §682.405 constitute repayment agreements "on terms satisfactory to the agency" under §682.410(b)(5)(ii), such that a rehabilitation agreement might fall within the scope of §682.410(b)(5)(ii)'s exception to the general rule that collection costs will be assessed against borrowers in default. Rather, the sole reference to collection costs in §682.405 appears to assume the assessment of collection costs in the rehabilitation context. See §682.405(b)(1)(vi)(B) (explaining that the guaranty agency must inform a borrower entering into a rehabilitation agreement "[o]f the amount of any collection costs to be added to the unpaid principal of the loan when the loan is sold to an eligible lender, which may not exceed 18.5 percent of the unpaid principal and accrued interest on the loan at the time of the sale").

Slip op. 50–51. But Judge Flaum thought that the court is required by *Auer v. Robbins*, 519 U.S. 452 (1997), to accept the agency's view that collection costs may not be assessed against borrowers who sign rehabilitation agreements—even though this view was announced in a brief filed as *amicus curiae* in this suit and contradicts some earlier statements by the Department of Education (although it is arguably consistent with the position taken in one filing in one district court in 2004 but never laid out in the Federal Register or

another place the regulated industry might access; compare Judge Hamilton's conclusion, slip op. 28–29, with Judge Manion's, slip op. 66–70).

The petition for rehearing en banc asks the court to consider whether *Auer* supports the Secretary's current position, when applied to conduct that predates the Secretary's *amicus* brief. That is a substantial and potentially important question, but an antecedent issue is whether *Auer* is sound. In concurring opinions to *Perez v. Mortgage Bankers Association*, 135 S. Ct. 1199 (2015), three Justices (including *Auer*'s author) expressed deep reservations about deferring to the position an agency adopts through means other than rulemaking. See also *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156 (2012); John F. Manning, *Constitutional Structure and Judicial Deference to Agency Interpretations of Agency Rules*, 96 Colum. L. Rev. 612 (1996).

I do not think that it would be a prudent use of this court's resources to have all nine judges consider how *Auer* applies to rehabilitation agreements, when *Auer* may not be long for this world. The positions taken by the three members of the panel show that this is one of those situations in which the precise nature of deference (if any) to an agency's views may well control the outcome.

The petition for rehearing does not contend that this litigation meets the standards for en banc review independent of the *Auer* question. None of the other circuits has considered whether repayment and rehabilitation agreements should be treated the same for the purpose of collection costs under §1091a(b)(1). Indeed, legal issues about the student-loan program rarely arise in any circuit outside of bankruptcy litigation. But an agency's (or litigant's) invocation of *Auer*

deference is a frequent occurrence, and one whose effects this litigation illuminates—for deference has set the stage for a conclusion that conduct, in compliance with agency advice when undertaken (and consistent with the district judge's view of the regulations' text), is now a federal felony and the basis of severe penalties in light of the Department's revised interpretation announced while the case was on appeal.