Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
04/05/2019 09:08 AM CDT

ROBERT J. PROKOP, APPELLANT AND CROSS-APPELLEE,
v. LOWER LOUP NATURAL RESOURCES
DISTRICT ET AL., APPELLEES
AND CROSS-APPELLANTS.
___ N.W.2d ___

Filed January 11, 2019.    No. S-18-082.

1. **Administrative Law: Judgments: Appeal and Error.** A judgment or final order rendered by a district court in a judicial review pursuant to the Administrative Procedure Act may be reversed, vacated, or modified by an appellate court for errors appearing on the record.

2. ____: ____: ____. When reviewing an order of a district court under the Administrative Procedure Act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.

3. **Judgments: Appeal and Error.** Whether a decision conforms to law is by definition a question of law, in connection with which an appellate court reaches a conclusion independent of that reached by the lower court.

4. ____: ____. An appellate court, in reviewing a district court judgment for errors appearing on the record, will not substitute its factual findings for those of the district court where competent evidence supports those findings.

5. **Natural Resources Districts: Political Subdivisions: Legislature.** A natural resources district, as a political subdivision, has only that power delegated to it by the Legislature, and an appellate court strictly construes a grant of power to a political subdivision.

6. **Natural Resources Districts.** A natural resources district possesses and can exercise the following powers and no others: first, those granted in express words; second, those implied in or incident to the powers expressly granted; and third, those essential to the declared objects and purposes of the district—not simply convenient, but indispensable.

7. **Administrative Law.** Generally, for purposes of construction, a rule or order of an administrative agency or political subdivision is treated like a statute.

8. ____. Absent a statutory or regulatory indication to the contrary, language contained in a rule or regulation is to be given its plain and ordinary meaning.

9. ____. A rule is open for construction only when the language used requires interpretation or may reasonably be considered ambiguous.

10. **Administrative Law: Political Subdivisions: Appeal and Error.** An appellate court accords deference to an agency or political subdivision's interpretation of its own rules unless plainly erroneous or inconsistent.

11. **Statutes.** A court must attempt to give effect to all parts of a statute, and if it can be avoided, no word, clause, or sentence will be rejected as superfluous or meaningless.

12. **Statutes: Words and Phrases.** In statutory interpretation, "shall," as a general rule, is considered mandatory and inconsistent with the idea of discretion.

13. **Due Process.** Due process principles protect individuals from arbitrary deprivation of life, liberty, or property without due process of law.

14. ____. Procedural due process claims require a two-step analysis: (1) whether the plaintiff has asserted a life, liberty, or property interest that is protected by the Due Process Clause and (2) whether the plaintiff was deprived of that interest without sufficient process.

15. **Administrative Law: Due Process.** A party appearing in an adjudication hearing before an agency or tribunal is entitled to due process protections similar to those given to litigants in a judicial proceeding.

16. **Due Process: Notice.** Due process does not guarantee an individual any particular form of state procedure. Instead, the requirements of due process are satisfied if a person has reasonable notice and an opportunity to be heard appropriate to the nature of the proceeding and the character of the rights which might be affected by it.

17. **Administrative Law: Due Process: Notice: Evidence.** In proceedings before an administrative agency or tribunal, procedural due process requires notice, identification of the accuser, factual basis for the accusation, reasonable time and opportunity to present evidence concerning the accusation, and a hearing before an impartial board.

18. **Due Process: Notice.** Due process requires notice reasonably calculated to inform the party to the action of the subject and issues involved in the proceeding.

19. **Administrative Law.** While similar to a judicial proceeding, an adjudication hearing before an agency does not guarantee an individual any particular form of state procedure.

20. ____. Administrative bodies have the authority to provide discovery which must be exercised judicially and not arbitrarily.
21. **Due Process: Property: Notice.** Due process involving deprivation of a significant property interest requires notice and an opportunity to be heard that is appropriate to the nature of the case.
22. **Due Process: Notice: Time.** Due process depends on, in part, whether the notice was sufficient to provide the party a reasonable opportunity to confront and cross-examine adverse witnesses and present evidence.
23. **Administrative Law: Due Process: Natural Resources Districts: Notice.** Due process does not require that a natural resources district provide notice of its specific evidence to a party prior to a hearing.
24. **Property.** A takings analysis begins with an examination of the nature of the owner's property interest.
25. **Waters.** Ground water, as defined by Neb. Rev. Stat. § 46-706 (Reissue 2010), is owned by the public, and the only right held by an overlying landowner is in the use of the ground water.
26. **Constitutional Law: Waters: Appurtenances: Property.** The right of an owner of overlying land to use ground water is an appurtenance constituting property protected by Neb. Const. art. I, § 21.
27. **Waters: Public Policy.** Through its police power, the State has the power to determine public policy with regard to ground water and can alter the common law governing the use of ground water.
28. **Property: Constitutional Law.** The appropriate exercise of police power occurs where an owner is denied the unrestricted use or enjoyment of his property, or his property is taken from him, because his use or enjoyment of such property is injurious to the public welfare.
29. **Waters.** Appropriate use of police power includes that the State place limitations on the withdrawals of ground water in times of shortage.
30. **Administrative Law: Appeal and Error.** In a de novo review on the record of an administrative order, the district court is required to make independent factual determinations based upon the record, and the court reaches its own independent conclusions with respect to the matters at issue.

Appeal from the District Court for Valley County: Karin L. Noakes, Judge. Affirmed.

Brian C. Buescher and Dwyer Arce, of Kutak Rock, L.L.P., for appellant.

Blake E. Johnson and Katherine J. Spohn, of Bruning Law Group, for appellees.

Donald G. Blankenau and Kennon G. Meyer, of Blankenau, Wilmoth & Jarecke, L.L.P., for amicus curiae Nebraska Groundwater Coalition.

HEAVICAN, C.J., CASSEL, STACY, FUNKE, and PAPIK, JJ.

FUNKE, J.

Robert J. Prokop appeals from the district court's order affirming the findings and modifying a cease and desist order of the Lower Loup Natural Resources District (LLNRD) Board directing Prokop to suspend use of ground water wells for noncompliance with LLNRD's annual reporting requirements.

Prokop challenges LLNRD's authority under the Nebraska Ground Water Management and Protection Act (GWMPA)[1] and LLNRD rules which require operators to provide actual crop yield data in their annual reports and to impose sanctions for noncompliance with LLNRD reporting requirements. Prokop further argues that LLNRD failed to provide him sufficient due process in its proceedings on whether he complied with LLNRD reporting requirements and that LLNRD's suspension of his ground water rights constituted a taking without just compensation. Prokop additionally challenges the district court's refusal to receive certain exhibits during his appeal to the district court and its failure to award him attorney fees. LLNRD and the board cross-appeal and argue the district court improperly reduced the duration of Prokop's suspension of ground water access. For the reasons set forth herein, we affirm.

## I. BACKGROUND

LLNRD is a natural resources district (NRD) authorized by GWMPA to regulate certain activities which may contribute to ground water contamination due to nitrate nitrogen and other contaminants.[2] GWMPA enables NRD's to establish ground

---

[1] See Neb. Rev. Stat. §§ 46-701 to 46-756 (Reissue 2010 & Cum. Supp. 2016).

[2] § 46-704.

water management areas for the protection of ground water quality.[3] GWMPA requires NRD's to maintain a ground water management plan that, among other obligations and to the extent possible, identifies the levels and sources of ground water contamination within the district; ground water quality goals; long-term solutions necessary to prevent the levels of ground water contaminates from becoming too high and to reduce high levels sufficiently to eliminate health hazards; and practices recommended to stabilize, reduce, and prevent the occurrence, increase, or spread of ground water contamination.[4] GWMPA authorizes NRD's to adopt rules and regulations necessary to discharge the administrative duties assigned under GWMPA and to require such reports from ground water users as may be necessary.[5] GWMPA provides that a ground water user who violates any controls, rules, or regulations "shall be subject to the imposition of penalties imposed through the controls adopted by the district, including, but not limited to, having any allocation of water granted or irrigated acres certified by the district reduced in whole or in part."[6] Cease and desist orders may also be issued by NRD's against ground water users following 3 days' notice to the person affected stating the contemplated action and, in general, the grounds for the action and following a reasonable opportunity to be heard.[7]

Pursuant to GWMPA directives, LLNRD established a ground water management area comprising a large portion of its geographical area, adopted water quality and pollution control as one of its goals, and enacted rules and regulations to implement its obligations under GWMPA. Rule 7 of LLNRD's "Groundwater Management Area Rules & Regulations" directs that LLNRD is divided into 28 ground water quality

---

[3] § 46-712(1)(b).

[4] § 46-709.

[5] § 46-707(1).

[6] § 46-746(1).

[7] § 46-707(1)(h). See, also, § 46-746(1).

management subareas and provides that each subarea may be subject to water quality controls in three separate phases based upon median nitrate nitrogen levels. Under "Phase III," rule 7 directs that an operator—a person with direct control over day-to-day farming operations of the land—must, among other obligations, "[s]ubmit, on forms provided by [LLNRD], a report of yearly water tests, flow meter reading, water applied, soil tests, crops planted, yield goals, nitrogen applied, and other field operations required prior to January 31st . . . ." The forms which LLNRD provides to operators require specific information of farming operations, including number of acres, the crop planted, expected yield, nitrogen readings and application, water applied, irrigation date, and actual crop yield. Operators are also required to sign and date the forms. To enforce compliance with this obligation and other controls, rules, and regulations adopted by LLNRD, rule 2 provides:

[LLNRD] shall have the authority to enforce these rules and regulations for the . . . protection of groundwater quality . . . by issuing cease and desist orders in accordance with the procedure hereinafter specified and by bringing appropriate actions in the District Court for the county in which any violations occur for enforcement of such orders.

Since 1962, Prokop has operated a farm on property he owns within LLNRD's regulated area in which he irrigates a significant portion of his crops. Prokop's property is within a phase III subarea of the district, and he is required to submit yearly reports to LLNRD on its forms provided.

In 2013, prior to the actions underlying the present case, Prokop was subject to an enforcement action by LLNRD in the district court for Nance County under case No. CI 13-01. LLNRD initiated that case against Prokop for illegal wells and failure to submit completed forms for 2010 and 2011 by not providing the actual crop yield data for those years. The district court found Prokop in violation of LLNRD's reporting requirements and ordered him to provide the required reports.

### 1. ADMINISTRATIVE ACTION

The instant case involves Prokop's annual reports from 2015 and 2016 and arose from LLNRD concerns about missing information from those reports, including actual crop yield data, irrigation data, nitrogen application, and dates and signatures. Due to these concerns, LLNRD's board voted in April 2017 to file a complaint against Prokop and issued a "Notice of Intent to Issue Cease and Desist Order and Impose Penalties for Failing to Submit Annual Reporting" which was served on Prokop on May 2. In the notice, LLNRD alleged that Prokop "failed to submit timely and complete annual reports . . . for the [2015 and] 2016 crop year[s]," that "LLNRD sent multiple notice to [Prokop] requesting he submit the annual reports," and that "LLNRD has reason to believe [Prokop] has intentionally and repeatedly violated the annual reporting requirements." LLNRD stated its belief that Prokop "should be subject to penalties pursuant to the GWMPA and a cease and desist order should be issued." The notice additionally provided that Prokop "has until June 1, 2017 to submit the complete annual reports" and informed Prokop of "LLNRD's intention to enforce the penalty provisions of the GWMPA in the event [Prokop] fails to submit timely and complete annual reporting in accordance with this Notice." In particular, the notice stated LLNRD's intention to "de-certify [Prokop's] irrigated acres" and "seek maximum civil penalties." The notice also informed Prokop that "a hearing is scheduled regarding this Notice at 5:00 p.m. on May 25, 2017," "[t]he hearing shall be conducted on the record," Prokop "will be given the opportunity to present any evidence or testimony he may have with respect to the violations identified in this Notice," Prokop may appear through counsel, and the board will determine whether a cease and desist order should be issued based on the record developed at the hearing.

A hearing before the board on LLNRD's notice was held on May 25, 2017. At the hearing, LLNRD offered and the board received a copy of LLNRD's ground water rules and

regulations, a blank "Groundwater Management Area Annual Report Form," the notice, the return of service of the notice, proofs of publication of the notice, the complaint and order in case No. CI 13-01, Prokop's "Groundwater Management Area Annual Report Form" for the 2015 crop year, and Prokop's "Groundwater Management Area Annual Report Form" for the 2016 crop year.

LLNRD presented testimony from the assistant general manager of LLNRD. He testified to the rules and regulations adopted by LLNRD. He explained Prokop's property is within a subarea of the district that is designated "Phase III" and the rules that apply to the property, including Prokop's annual reporting obligations as the operator.

LLNRD also presented testimony from an agronomy technician for LLNRD. He testified that the subarea in which Prokop's land is located has an issue with ground water nitrates which are unsafe for consumption at certain levels. He explained that the purpose of LLNRD's annual reports is to record nitrogen characteristics and develop a plan to reduce nitrate contamination. He testified that actual crop yield data is part of the factors that record nitrogen characteristics as it helps determine how many pounds of nitrogen are removed from the field.

The agronomy technician testified that he reviewed Prokop's 2015 and 2016 reports and that the 2015 report was incomplete, because it failed to indicate an actual crop yield and was missing a signature, and that the 2016 report was late and incomplete, because it failed to indicate actual crop yields, failed to provide the irrigation data, failed to provide the nitrogen applications, and was not signed or dated. He explained that Prokop's reporting insufficiencies are ongoing and that LLNRD has had issues with the quality of Prokop's reporting since 2009.

Prokop presented no evidence or witnesses, but he made factual arguments during the hearing and cross-examined both LLNRD witnesses. Prokop stipulated to the receipt of the

notice and acknowledged publication in the newspapers of general circulation within the district. However, Prokop repeatedly objected to the hearing, arguing that he was not provided LLNRD's evidence with sufficient time prior to the hearing to enable a fair opportunity to develop his defense. He additionally challenged the applicability of the reports' actual crop yield requirements, stating he "has long taken the position that the LLNRD's demand that farmers provide actual yield information is unnecessary from a scientific standpoint and the request for such information is a governmental overreach not allowed or required by law."[8]

After the presentation of evidence and argument by the parties, LLNRD's board took the matter under advisement and delayed any action until June 22, 2017, the next regularly scheduled meeting. The delay allowed Prokop additional time to meet the June 1 deadline set out in the notice to Prokop. However, Prokop failed to complete the reports and the board voted at the June 22 meeting to find Prokop had violated LLNRD reporting rules by failing to submit timely and complete reports for the 2015 and 2016 crop years.

Pursuant to its vote on June 29, 2017, LLNRD's board executed a cease and desist order to impose penalties, which order was served on Prokop July 6. Through this order, the board found the following: Prokop's land was located in a phase III subarea; Prokop's 2015 annual report failed to include data on actual crop yields, nitrogen application, and a signature; and Prokop's 2016 annual report was filed after the January 31 deadline and failed to include data on actual crop yields, nitrogen application, water applied, and Prokop's signature. The order also noted Prokop's history of noncompliance with LLNRD's reporting requirements. In consideration of its findings and Prokop's noncompliant history, the board ordered:

> 1) [Prokop] and all heirs, successors, assigns, or agents cease and desist the use of all groundwater irrigation

---

[8] Brief for appellant at 17.

wells on the Property for a period of four (4) years commencing January 1, 2018 and continuing through December 31, 2021;

2) [Prokop] to submit complete annual report forms for the Property for the 2015 crop year and the 2016 crop year by January 31, 2018; and

3) [Prokop] to submit timely and complete annual report forms for the Property for all subsequent crop years.

### 2. Appeal to District Court

Prokop filed a pro se petition for review in the district court in June 2017, prior to the board's executing the cease and desist order. After obtaining counsel, Prokop filed an amended petition in July, claiming: the cease and desist order was not supported by the evidence; LLNRD's hearing and actions were not conducted in accordance with Nebraska law, LLNRD's rules and regulations, and the requirements of due process; the board's order was in violation of Nebraska law, LLNRD's rules and regulations, and the requirements of due process; the cease and desist order constituted a taking without just compensation and the due process required for such action; and the cease and desist order was issued for reasons not allowed by law.

At a hearing on Prokop's amended petition, Prokop offered exhibits 4 and 5 to support his claims that LLNRD's actions, the hearing, and the cease and desist order were in violation of his due process rights. LLNRD objected to these exhibits because they were not part of the administrative record, while Prokop argued these exhibits fell within an exception for evidence showing a procedural due process violation.

Exhibit 4 was an affidavit from Mitch Husmann, a location manager for a co-op, who sold Prokop and his tenants fertilizer and assisted Prokop in filling out the annual reports for LLNRD. Husmann explained that he would work with Prokop to fill out the reports, Prokop would sign them, and they would

be delivered to LLNRD. While this is what occurred in 2015, Husmann provided that the typical procedure was interrupted in 2016 because Prokop's new tenant purchased fertilizer through another sales representative. Therefore, Husmann did not have all the information necessary to fill out Prokop's forms, so he filled out what he could and delivered the incomplete 2016 report to LLNRD in mid-January under the understanding that Prokop would come in to complete it.

Exhibit 5 was an affidavit from Prokop detailing his relationship with Husmann and explaining that he was unaware until the hearing that the typical procedure was not followed for the 2016 report due to his tenant's using a different sales representative. The affidavit also asserted that Prokop believed the notice concerned only his refusal to provide actual crop yield data and that the notice failed to mention the 2016 reports were not signed and submitted in the same manner Husmann had submitted previous reports.

The district court entered an order on the petition in January 2018. The court stated that exhibits 4 and 5 were not received because they are outside the scope of the official record. The order then affirmed the cease and desist order's findings. First, the court determined LLNRD rules and GWMPA enable LLNRD to require actual crop yield data on its annual reports as "'other field operations'" and suspend ground water rights for noncompliance. Second, the court determined LLNRD complied with its due process obligations. Specifically, the court found the notice adequately informed Prokop of the purpose of the hearing and the allegations against him. Because the court found Prokop was informed of the purpose of the hearing and the court's understanding that due process does not require notice of evidence to be presented at an administrative hearing, the court found Prokop was not denied due process as a result of insufficient notice from LLNRD of the evidence it would present. The court also found the order's factual findings were supported by the evidence. Finally, the court determined the purpose of

the annual reports serves a substantial and legitimate government interest in preventing ground water contamination and, therefore, the cease and desist order is an appropriate exercise of police power that does not deprive Prokop of property rights without just compensation.

However, the district court's order modified the cease and desist order's penalty. The district court found the suspension of 4 years to be an unreasonable use of LLNRD's police power under the facts of the case and determined the public health and welfare could be preserved by imposing a less severe restriction. Therefore, the court modified the penalty from the 4-year suspension of Prokop's ground water rights to a 1-year suspension with the possibility of 3 additional years if Prokop continues to violate LLNRD's reporting requirements.

## II. ASSIGNMENTS OF ERROR

Prokop assigns, restated, that the district court erred in affirming the board's order and determining (1) LLNRD had the authority under LLNRD rules and GWMPA to require Prokop to provide information in his annual reports, including actual crop yield data; (2) LLNRD had the authority under LLNRD rules and GWMPA to impose a suspension of ground water access as a penalty for noncompliance with LLNRD rules; (3) LLNRD did not violate Prokop's right to procedural due process and deny him a reasonable opportunity to be heard; (4) LLNRD did not erroneously limit the possibility of competent judicial review by violating Prokop's due process rights; and (5) LLNRD's suspension of Prokop's ground water access did not constitute a taking without just compensation. Prokop also assigns the district court erred in sustaining LLNRD's objection to Prokop's exhibits 4 and 5 and failing to award Prokop attorney fees.

LLNRD and the board assign on cross-appeal that the district court erred in modifying the duration of the penalty imposed by LLNRD.

## III. STANDARD OF REVIEW

[1,2] A judgment or final order rendered by a district court in a judicial review pursuant to the Administrative Procedure Act (APA) may be reversed, vacated, or modified by an appellate court for errors appearing on the record.[9] When reviewing an order of a district court under the APA for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.[10]

[3,4] Whether a decision conforms to law is by definition a question of law, in connection with which an appellate court reaches a conclusion independent of that reached by the lower court.[11] An appellate court, in reviewing a district court judgment for errors appearing on the record, will not substitute its factual findings for those of the district court where competent evidence supports those findings.[12]

## IV. ANALYSIS

### 1. LLNRD Authority to Require
### Actual Crop Yield Data

Prokop first assigns the district court erred in determining LLNRD had authority to require Prokop to provide actual crop yield data.

[5,6] LLNRD, as a political subdivision, has only that power delegated to it by the Legislature, and we strictly construe a grant of power to a political subdivision.[13] An NRD possesses and can exercise the following powers and no others: first, those granted in express words; second, those implied in

---

[9] *Medicine Creek v. Middle Republican NRD*, 296 Neb. 1, 892 N.W.2d 74 (2017).

[10] *Id.*

[11] *Stejskal v. Department of Admin. Servs.*, 266 Neb. 346, 665 N.W.2d 576 (2003).

[12] *Id.*

[13] *Medicine Creek, supra* note 9.

or incident to the powers expressly granted; and third, those essential to the declared objects and purposes of the district— not simply convenient, but indispensable.[14]

As stated above, GWMPA directs NRD's to regulate certain activities which may contribute to ground water contamination due to nitrate nitrogen and other contaminants.[15] GWMPA authorizes NRD's to adopt rules and regulations necessary to discharge the administrative duties assigned under GWMPA, require such reports from ground water users as may be necessary, and issue cease and desist orders to enforce any provisions of GWMPA.[16]

LLNRD rule 7 directs that each subarea of the district may be subject to water quality controls in three separate phases based upon median nitrate nitrogen levels. Under phase III, the phase Prokop's land was designated, rule 7 directs that an operator must "[s]ubmit, on forms provided by [LLNRD], a report of yearly water tests, flow meter reading, water applied, soil tests, crops planted, yield goals, nitrogen applied, and other field operations required prior to January 31ˢᵗ . . . ." Among other information, the forms which LLNRD provides to operators require actual crop yield data.

Prokop claims rule 7 fails to authorize LLNRD to collect actual crop yield data, because the rule does not include it in the list of operators' reporting obligations. Prokop also argues that actual crop yield data was not implicitly included under the phrase "other field operations," because actual yield data is not an operation.

[7-10] Generally, for purposes of construction, a rule or order of an administrative agency or political subdivision is treated like a statute.[17] Absent a statutory or regulatory indication to

---

[14] *Id.*

[15] § 46-704.

[16] § 46-707(1).

[17] See *Nebraska Protective Servs. Unit v. State*, 299 Neb. 797, 910 N.W.2d 767 (2018).

the contrary, language contained in a rule or regulation is to be given its plain and ordinary meaning.[18] A rule is open for construction only when the language used requires interpretation or may reasonably be considered ambiguous.[19] We accord deference to an agency or political subdivision's interpretation of its own rules unless plainly erroneous or inconsistent.[20]

Here, LLNRD's interpretation of "other field operations" to include actual crop yield data is not inconsistent or plainly erroneous. The use of "other field operations" requires interpretation, and LLNRD has interpreted it to include data on actual crop yield. In the blank "Groundwater Management Area Annual Report Form," as well as Prokop's reports from crop years 2015 and 2016, LLNRD asks for actual crop yield data along with other information from operators' farming operations. LLNRD's agronomy technician testified that requiring actual crop yield is important to LLNRD's adopted goals of water quality and pollution control and LLNRD's obligations under GWMPA to implement these goals. He testified that the actual crop yield data is used in connection with the other farming operations data to record nitrogen characteristics and develop a plan to reduce nitrate contamination, because actual crop yield data helps determine how many pounds of nitrogen are removed from the field. LLNRD, in requiring the data on the reports, clearly interpreted "other field operations" to encompass actual crop yield data, which is supported by LLNRD's utilization of the data in implementing its statutory duties.

Prokop contends that interpreting "other field operations" to include actual crop yield data is inconsistent with a plain reading of rule 7, because actual crop yield data is not an operation. However, such a reading is incorrect. Rule 7 lists specific field operations, including items such as "soil tests" and "yield

---

[18] Id.

[19] Id.

[20] See id.

goals." If actual crop yield data, which is the end product of field operations, is not field operations data, than neither would soil tests as the state of the soil during field operations or yield goals which are what operators believe they will produce through field operations even though soil tests and yield goals are explicitly included in the list of required field operations data.

Prokop additionally contends that interpreting "other field operations" to include actual crop yield data is inconsistent and plainly erroneous, because the purpose of rule 7 is to implement LLNRD's goals of water quality and pollution control through the reduction of nitrogen contamination, and actual crop yield data is unnecessary to do so. However, we cannot say that requiring actual crop yield data is clearly erroneous to reducing nitrogen contamination. Moreover, the record contains testimony on how actual yield data is relevant to a determination of nitrogen levels removed from the soil and how it is helpful to LLNRD and operators in determining other relevant data required in the annual reporting. Thus, on the record before us, we cannot say the interpretation of "other field operations" to include actual crop yield data was inconsistent and plainly erroneous due its relationship to LLNRD's stated goals.

In consideration of all of the above, the district court did not err in determining LLNRD had the authority to require actual crop yield data.

## 2. LLNRD AUTHORITY TO IMPOSE SUSPENSION OF GROUND WATER ACCESS

Prokop next assigns the district court erred in determining LLNRD had authority to impose a suspension of ground water access for a violation of LLNRD reporting requirements.

Under § 46-707(1), NRD's may adopt rules and regulations necessary to discharge the administrative duties assigned under GWMPA; require such reports from ground water users as may be necessary; and issue cease and desist orders to enforce any provisions of GWMPA.

Under § 46-746(1), any person who violates any controls, rules, or regulations "shall be subject to the imposition of penalties imposed through the controls adopted by the district, including, but not limited to, having any allocation of water granted or irrigated acres certified by the district reduced in whole or in part."

Additionally, LLNRD enacted rule 2, which addresses enforcement of noncompliance with LLNRD rules and regulations and GWMPA. Rule 2 provides:

[LLNRD] shall have the authority to enforce these rules and regulations for the . . . protection of groundwater quality . . . by issuing cease and desist orders in accordance with the procedure hereinafter specified and by bringing appropriate actions in the District Court for the county in which any violations occur for enforcement of such orders.

Prokop contends the language of § 46-746(1) that

[a]ny person who violates . . . any controls, rules, or regulations adopted by [an NRD] relating to a management area shall be subject to the imposition of penalties imposed through the controls adopted by the district, including, but not limited to, having any allocation of water granted or irrigated acres certified by the district reduced in whole or in part

requires LLNRD to adopt rules and regulations that specifically list the penalties available. Further, Prokop argues, such an interpretation required LLNRD to adopt rules and regulations which explained that a violation of LLNRD reporting requirements could result in the allocation of ground water reduced in whole or in part.

[11] Contrary to Prokop's argument, a "penalty" and a "control" under GWMPA are separate and distinct terms. A court must attempt to give effect to all parts of a statute, and if it can be avoided, no word, clause, or sentence will be rejected as superfluous or meaningless.[21] The inclusion

---

[21] *Wisner v. Vandelay Investments*, 300 Neb. 825, 916 N.W.2d 698 (2018).

of both terms leads to the determination that the words are not synonymous.

Section 46-746(1) enables an NRD to enforce a ground water user's obligations under GWMPA and the rules and regulations of an NRD by imposing penalties, including, but not limited to, having any allocation of water granted or irrigated acres certified by the district reduced in whole or in part by utilizing the procedure adopted in the rules and regulations of an NRD. Section 46-746(1) does not require an NRD to restate in its rules and regulations that a violation could result in a reduction of ground water access. Instead, § 46-746(1) articulates one specific penalty which an NRD can impose upon the violator—the reduction of allocated water. As to the controls adopted by an NRD, in this case, LLNRD adopted rule 2, which enables LLNRD to issue cease and desist orders following the procedure outlined in the subsequent rules.

[12] Such a determination aligns with our opinions in *Loup City Pub. Sch. v. Nebraska Dept. of Rev.*[22] and *Goodyear Tire & Rubber Co. v. State*.[23] In *Loup City Pub. Sch.*, we addressed the question of whether the Department of Revenue was required to promulgate rules and regulations under Neb. Rev. Stat. § 79-3809 (Reissue 1994).[24] We concluded that the department was required to do so.[25] That statute, which has since been amended and recodified, provided in relevant part: "Establishment of the adjusted valuation shall be based on assessment practices established by rule and regulation adopted and promulgated by the Department of Revenue."[26] We noted that in statutory interpretation, "shall," as a general

---

[22] *Loup City Pub. Sch. v. Nebraska Dept. of Rev.*, 252 Neb. 387, 562 N.W.2d 551 (1997).

[23] *Goodyear Tire & Rubber Co. v. State*, 275 Neb. 594, 748 N.W.2d 42 (2008).

[24] *Loup City Pub. Sch., supra* note 22.

[25] *Id.*

[26] § 79-3809(1) (now codified at Neb. Rev. Stat. § 79-1016 (Supp. 2017)).

rule, is considered mandatory and inconsistent with the idea of discretion.[27] Thus, under the plain language of that statute, the department was required to adopt and promulgate rules and regulations to regulate the valuation process.[28] Because the department had not adopted and promulgated rules and regulations governing the valuation process, we concluded that the adjusted valuations of the department were not in conformity with the law.[29]

In contrast, in *Goodyear Tire & Rubber Co.*, we addressed whether the State Tax Commissioner was required to promulgate rules and regulations under Neb. Rev. Stat. § 77-4111 (Reissue 2003) to define "qualified property," a term utilized in the Employment and Investment Growth Act.[30] Section 77-4111 provides that the commissioner "shall adopt and promulgate all rules and regulations necessary to carry out the purposes of the Employment and Investment Growth Act." In concluding the commissioner was not required to establish rules and regulations regarding its interpretation of "qualified property," we noted the language in § 77-4111 required the adoption and promulgation of "only those rules that are necessary for carrying out the purposes" of the act.[31]

While § 46-707(1)(a) authorizes the adoption and promulgation of rules necessary to discharge the administrative duties assigned in GWMPA, § 46-746(1) establishes that the penalties for violations under GWMPA and rules and regulations of an NRD include reducing the violator's ground water access in whole or in part. As such, we conclude that it is unnecessary for LLNRD to promulgate rules and regulations restating the potential for LLNRD to restrict a violator's ground water access.

---

[27] *Loup City Pub. Sch., supra* note 22.

[28] *Id.*

[29] *Id.*

[30] *Goodyear Tire & Rubber Co., supra* note 23.

[31] *Id*. at 601, 748 N.W.2d at 49.

In consideration of the above, the district court did not err in determining LLNRD had the authority to suspend Prokop's ground water access under § 46-746(1).

### 3. Procedural Due Process

Prokop assigns LLNRD violated his due process rights by not providing him adequate notice of the charges against him and of the evidence to be presented.

[13,14] Due process principles protect individuals from arbitrary deprivation of life, liberty, or property without due process of law.[32] Procedural due process claims require a two-step analysis: (1) whether the plaintiff has asserted a life, liberty, or property interest that is protected by the Due Process Clause and (2) whether the plaintiff was deprived of that interest without sufficient process.[33] Here, Prokop's interest in the use of ground water is a property interest that is under due process protections.[34] Therefore, the issue is whether Prokop was deprived of that interest without sufficient process.

[15-17] A party appearing in an adjudication hearing before an agency or tribunal is entitled to due process protections similar to those given to litigants in a judicial proceeding.[35] Due process does not guarantee an individual any particular form of state procedure. Instead, the requirements of due process are satisfied if a person has reasonable notice and an opportunity to be heard appropriate to the nature of the proceeding and the character of the rights which might be affected by it.[36] In proceedings before an administrative agency or tribunal, procedural due process requires notice, identification of the accuser, factual basis for the accusation, reasonable time

---

[32] *Cain v. Custer Cty. Bd. of Equal.*, 298 Neb. 834, 906 N.W.2d 285 (2018). See, also, U.S. Const. amends. V and XIV; Neb. Const. art. I, § 3.

[33] *White v. Busboom*, 297 Neb. 717, 901 N.W.2d 294 (2017).

[34] See *Sorensen v. Lower Niobrara Nat. Resources Dist.*, 221 Neb. 180, 376 N.W.2d 539 (1985) (superseded by statute on other grounds).

[35] *Cain, supra* note 32.

[36] *Id.*

and opportunity to present evidence concerning the accusation, and a hearing before an impartial board.[37]

### (a) Notice of Factual Basis for LLNRD's Accusations

In its notice, LLNRD alleged that Prokop "failed to submit timely and complete annual reports . . . for the [2015 and] 2016 crop year[s]," that "LLNRD sent multiple notice to [Prokop] requesting he submit the annual reports," and that "LLNRD has reason to believe [Prokop] has intentionally and repeatedly violated the annual reporting requirements." The notice stated LLNRD's belief that Prokop "should be subject to penalties pursuant to the GWMPA and a cease and desist order should be issued" for the violation. The notice additionally provided that Prokop "has until June 1, 2017 to submit the complete annual reports" and informed Prokop of "LLNRD's intention to enforce the penalty provisions of the GWMPA in the event [Prokop] fails to submit timely and complete annual reporting in accordance with this Notice." In particular, the notice stated LLNRD's intention to "de-certify [Prokop's] irrigated acres" and "seek maximum civil penalties." The notice also informed Prokop that "a hearing is scheduled regarding this Notice at 5:00 p.m. on May 25, 2017," "[t]he hearing shall be conducted on the record," Prokop "will be given the opportunity to present any evidence or testimony he may have with respect to the violations identified in this Notice," Prokop may appear through counsel, and the board will determine whether a cease and desist order should be issued based on the record developed at the hearing.

Prokop acknowledges the notice accused Prokop of "'fail[ing] to submit timely and complete annual reports,'" but claims that the notice provided no factual basis as to what it alleged was deficient in the reports.[38] Instead, Prokop

---

[37] *Stenger v. Department of Motor Vehicles*, 274 Neb. 819, 743 N.W.2d 758 (2008).

[38] Brief for appellant at 26.

claims he was unaware of LLNRD's allegations of missing signatures, dates, irrigation data, and nitrogen application until the hearing. Prokop argues that without such explanation of deficiencies, he was deprived of the opportunity to gather evidence and present witnesses on the precise allegations and was prevented from taking action to correct any deficiency before the hearing.

[18] However, contrary to Prokop's claim, the notice was sufficient to inform Prokop of LLNRD's claims and supporting factual allegations. Due process requires notice reasonably calculated to inform the party to the action of the subject and issues involved in the proceeding.[39] LLNRD's notice alleged Prokop "failed to submit timely and complete annual reports" for 2015 and 2016 and that Prokop "intentionally and repeatedly violated the annual reporting requirements." These allegations informed Prokop that the reports for 2015 and 2016 were deficient and incomplete. The deficiencies of missing annual yield data, nitrogen application, water applied, and Prokop's signatures were apparent on the face of the reports listed in the notice.

Prokop relies upon our decision in *Blanchard v. City of Ralston*[40] to support his contention that the notice of LLNRD's claims and supporting factual allegations were insufficient. In *Blanchard*, a city determined that a vacant house was a public nuisance and that its nonremedy was an immediate emergency. The city posted a notice on the house alleging only that the building was an unsafe nuisance because of an "odor and health-related hazards" and that the owner had 3 days to repair or demolish it before the city would subsequently demolish the house itself.[41] The owner received no other notice and was only made aware of the posted notice after the 3-day period lapsed

---

[39] *Robinson v. Morrill Cty. Sch. Dist. #63*, 299 Neb. 740, 910 N.W.2d 752 (2018).

[40] *Blanchard v. City of Ralston*, 251 Neb. 706, 559 N.W.2d 735 (1997).

[41] *Id.* at 709, 559 N.W.2d at 737.

but before the demolition occurred. A hearing was scheduled for 1 hour prior to the demolition, with no further information given to the owner on the specific problems posed by the house. We determined that this violated the owner's due process rights, because the notice failed, under the circumstances, to give her a statutorily required reasonable amount of time and failed to meaningfully inform her of the complicated and substantial specific problems alleged to constitute the hazards so that she could have an opportunity to remedy the situation and defend her case.[42]

Unlike *Blanchard*, LLNRD's notice alleged a specific violation—that Prokop had "intentionally and repeatedly violated the annual reporting requirements"—and provided specific factual allegations that the 2015 and 2016 reports were incomplete and late. The individual violations of Prokop's missing data were simple and readily apparent from the listed forms without the need of an expert, in contrast to the issues alleged to constitute a hazard in *Blanchard*.[43]

LLNRD's notice was reasonably calculated to inform Prokop about the allegations against him and the issues involved in the proceeding. Accordingly, the notice satisfied Prokop's due process rights by informing him of the factual basis for the accusation.

### (b) Notice of LLNRD's Evidence

Prokop also claims that his due process rights were violated by not receiving notice of the evidence LLNRD intended to present and that such violation limits the possibility of competent judicial review. Prokop argues the notice appropriate to the nature of the present case includes "notice of the evidence, witnesses, and factual basis for the allegations against him,"[44] in part due to his significant property interest to the access of ground water.

---

[42] *Blanchard, supra* note 40.

[43] See *id.*

[44] Brief for appellant at 29.

GWMPA does not set forth a specific formal due process hearing procedure containing the requirement that an NRD provide the names of any witnesses who will be called to testify against the alleged violator, an opportunity to examine any documents that will be presented at the hearing, the right to be represented, and an opportunity to cross-examine all witnesses and to present evidence material to the issues.[45] Neither do the rules of LLNRD set forth rules of procedure regarding prehearing discovery. As a result, we must consider Prokop's argument under the bare minimum due process requirements.

Prokop alleges not only that LLNRD failed to provide him notice of the evidence but also that he repeatedly requested the evidence prior to the hearing and was denied. However, in the record before us, there is no available evidence or stated allegations that would indicate Prokop requested and was denied access to LLNRD's evidence prior to the hearing, including the 2015 and 2016 reports. Thus, we consider whether LLNRD was required to provide Prokop with notice of the evidence it intended to present and not whether LLNRD violated its due process obligations by refusing Prokop's alleged request for access to the evidence.

[19,20] There is no due process requirement that an NRD provide notice of evidence to an adverse party prior to a hearing. In *Cain v. Custer Cty. Bd. of Equal.*,[46] we stated that, while similar to a judicial proceeding, an adjudication hearing before an agency does not guarantee an individual any particular form of state procedure. In *States v. Anderson*,[47] we declined to recognize prehearing discovery as a requirement of due process but acknowledged that administrative bodies have the authority to provide discovery which must be exercised judicially and not arbitrarily. And in *Marshall v. Wimes*,[48] in

---

[45] Compare § 46-743, with Neb. Rev. Stat. § 79-832 (Reissue 2014).

[46] See, e.g., *Cain, supra* note 32.

[47] *States v. Anderson*, 219 Neb. 545, 364 N.W.2d 38 (1985).

[48] *Marshall v. Wimes*, 261 Neb. 846, 626 N.W.2d 229 (2001).

addressing the refusal of an administrative body to issue a subpoena for appearance at a hearing, we explained that due process requires notice, identification of the accuser, factual basis for the accusation, reasonable time and opportunity to present evidence concerning the accusation, and a hearing before an impartial board.

[21,22] We have held that due process involving deprivation of a significant property interest requires notice and an opportunity to be heard that is appropriate to the nature of the case.[49] Stated another way, due process depends on, in part, whether the notice was sufficient to provide the party a reasonable opportunity to confront and cross-examine adverse witnesses and present evidence.[50]

Here, LLNRD's notice was sufficient to provide Prokop a reasonable opportunity to confront and cross-examine adverse witnesses and present evidence. The notice was given 23 days before the hearing, informed him of the time and location of the hearing, provided potential penalties, informed him that he would have the opportunity to address the charges and present evidence in his defense, and, as determined above, was sufficient to notify him of the charges and factual allegations supporting those charges, including that the 2015 and 2016 reports were deficient and that these deficiencies were part of an intentional and continuing pattern.

The evidence LLNRD provided at the hearing included the notice, proof of service and publication of the notice, the reports specified in the notice, LLNRD rules establishing LLNRD's authority to require and enforce the information on the reports, the complaint and order in Nance County District Court case No. CI 13-01, and testimony concerning the deficiencies of the reports and why the deficient material was important. All of this evidence was either a source of authority that was referenced in the notice, documents involving

---

[49] See, *Cain, supra* note 32; *Blanchard, supra* note 40.

[50] *Id.*

the notice and its receipt, or factual confirmation of specific allegations set forth in the notice. As such, the evidence presented was a natural extension of the notice and Prokop was sufficiently informed to provide him a reasonable opportunity to cross-examine LLNRD's witnesses and present evidence at the hearing.

(c) Notice of Use of Prior Violation

Prokop specifically claims his due process rights were violated by not receiving notice of LLNRD's intended use of case No. CI 13-01. By not receiving notice of LLNRD's intent, Prokop argues, he was denied the opportunity to gather evidence, present witnesses, and prepare a defense concerning the use of the prior proceedings. Further, Prokop claims case No. CI 13-01 had nothing to do with the present allegations and should not have been admitted and considered by the board.

[23] First, as discussed above, due process does not require that LLNRD provide notice of its specific evidence to Prokop prior to the hearing.[51]

LLNRD's notice did inform Prokop of its allegation that Prokop has "intentionally and repeatedly violated the annual reporting requirements." Case No. CI 13-01 was relevant to LLNRD's allegation because it was evidence of continued, similar violations. Prokop emphasizes in his brief that case No. CI 13-01 concerned illegal wells and alleges he would have presented further evidence on the facts surrounding those wells, but LLNRD used case No. CI 13-01 as evidence that Prokop had a history of violating LLNRD's reporting requirements. While case No. CI 13-01 does address the illegal wells, it also, more relevantly, finds Prokop in violation of reporting obligations and orders him to provide the required reports. As such, LLNRD's notice informing Prokop of its allegation that he has "intentionally and repeatedly violated the annual reporting requirements" appropriately informed him that his

_____

[51] See, e.g., *Cain, supra* note 32; *Marshall, supra* note 48; *Anderson, supra* note 47.

prior violations, including those violations under case No. CI 13-01, would be at issue and that they would be relevant to the Board's consideration of a potential penalty.

### 4. POSSIBILITY OF COMPETENT JUDICIAL REVIEW

Prokop assigns the district court erred in finding LLNRD's action did not limit the possibility of competent judicial review. Specifically, Prokop claims he was not provided adequate notice of the claims against him and LLNRD's intended evidence, which deprived him of the opportunity to gather evidence and arrange for witnesses to testify on his behalf.

Because we determined above that Prokop was provided adequate notice of the claims against him, was not entitled to notice of the specific evidence LLNRD intended to present, and was given opportunity to present his own evidence and call his own witnesses, Prokop's assignment that he was deprived of the possibility of competent judicial review due to lack of notice is without merit.

### 5. TAKING WITHOUT JUST COMPENSATION

Prokop contends LLNRD's issuance of a cease and desist order suspending his access to ground water, as modified by the district court, amounts to a taking without just compensation.

[24-26] A takings analysis begins with an examination of the nature of the owner's property interest.[52] Ground water, as defined by § 46-706, is owned by the public, and the only right held by an overlying landowner is in the use of the ground water.[53] As noted above, the right of an owner of overlying land to use ground water is an appurtenance constituting property protected by Neb. Const. art. I, § 21.[54]

[27-29] Through its police power, the State has the power to determine public policy with regard to ground water and can

---

[52] *Hill v. State*, 296 Neb. 10, 894 N.W.2d 208 (2017).

[53] See *In re Application U-2*, 226 Neb. 594, 413 N.W.2d 290 (1987).

[54] *Sorensen, supra* note 34.

alter the common law governing the use of ground water.[55] The appropriate exercise of police power occurs where an owner is denied the unrestricted use or enjoyment of his property, or his property is taken from him, because his use or enjoyment of such property is injurious to the public welfare.[56] This is in contrast to eminent domain, where property is taken from the owner and applied to public use because the use or enjoyment of such property is beneficial to the public.[57] Appropriate use of police power includes that the State place limitations on the withdrawals of ground water in times of shortage.[58]

Here, LLNRD's reporting requirements were implemented, in part, to address the goals under GWMPA of water quality and pollution control and address levels of nitrate nitrogen and other contaminants in ground water. In order to do so, LLNRD rules and regulations and GWMPA require various data from operators, including actual crop yield, nitrogen application, and water applied. This information is necessary to create long-term solutions to prevent levels of ground water contaminants from becoming too high and creating health hazards.[59] By not complying with the reporting requirements, Prokop was preventing LLNRD from information necessary to perform its duties under GWMPA. Thus, LLNRD limited Prokop's use, because his use or enjoyment of such property was injurious to the public welfare and, in doing so, this was an appropriate exercise of police power and did not amount to a taking without just compensation.

### 6. Exhibits 4 and 5

Prokop assigns the district court erred in declining to receive exhibits 4 and 5 to supplement LLNRD's record. Prokop

---

[55] See *Bamford v. Upper Republican Nat. Resources Dist.*, 245 Neb. 299, 512 N.W.2d 642 (1994).

[56] *Strom v. City of Oakland*, 255 Neb. 210, 583 N.W.2d 311 (1998).

[57] *Id.*

[58] See *Bamford, supra* note 55.

[59] See § 46-709.

claims these exhibits were admissible under "an exception to the general prohibition of extra-record evidence" for evidence of alleged procedural irregularities.[60]

However, exhibits 4 and 5 do not provide evidence relevant to whether there were procedural irregularities denying Prokop due process. Instead, Prokop purports that these exhibits demonstrate what evidence he could have presented if those procedural irregularities were not present. Evidence of what could have been presented if not for the alleged procedural violations is not evidence that would indicate whether or not such procedural violations occurred. Therefore, the district court did not err in declining to supplement LLNRD's record and receive exhibits 4 and 5.

In the alternative, Prokop claims the district court abused its discretion in failing to remand the matter to the board for further proceedings to allow Prokop the opportunity to present the evidence from exhibits 4 and 5 in the interest of justice. Prokop's argument centers on the allegation that he was denied due process and not provided sufficient notice of the claims against him. Having determined that the notice was sufficient to inform Prokop of the claims against him and that he was not entitled to a notice of the evidence which LLNRD intended to present, Prokop's claim that the district court erred in failing to remand the matter to allow him to supplement the record is without merit.

## 7. Attorney Fees

Finally, Prokop assigns the district court erred in failing to reverse the board's order and failing to award attorney fees, because LLNRD's position was not substantially justified. Under Neb. Rev. Stat. § 25-1803 (Reissue 2016), a court having jurisdiction over a civil action brought by the State or an action for judicial review brought against the State pursuant to the APA shall award fees and other expenses to the prevailing party unless the prevailing party is the State. Because

---

[60] Brief for appellant at 33.

we determined the district court did not err in affirming the board's order, Prokop was not the prevailing party and the district court did not err in declining to award Prokop attorney fees.

### 8. Modification of Duration of Penalty LLNRD Imposed

On cross-appeal, LLNRD and the board assign the district court erred in modifying the penalty from a 4-year suspension of Prokop's ground water rights to a 1-year suspension with the possibility of 3 additional years if Prokop continues to violate LLNRD's reporting requirements. In support of this assignment, LLRND asserts the district court should have given deference to the board's penalty. However, this assertion is at odds with the district court's standard of review.

[30] Any person aggrieved by an order of an NRD issued pursuant to GWMPA may appeal the order, and that appeal shall be in accordance with the APA.[61] That appeal is conducted by the district court without a jury de novo on the record of the agency.[62] In a de novo review on the record of an administrative order, the district court is required to make independent factual determinations based upon the record, and the court reaches its own independent conclusions with respect to the matters at issue.[63]

Here, the district court performed such a de novo review and determined that the 4-year suspension was unreasonable under the circumstances of the case and modified the penalty to a 1-year suspension with a possibility of 3 more years if continued noncompliance.

LLNRD and the board acknowledge the statutory standard of review is de novo when a court is reviewing questions of fact or law. However, LLNRD and the board argue that the determination of a penalty is not a factual or legal issue but is,

---

[61] See § 46-750.

[62] Neb. Rev. Stat. § 84-917(5)(a) (Reissue 2014).

[63] See *Medicine Creek, supra* note 9.

instead, a policy matter. LLNRD and the board argue GWMPA provides NRD's deference to determine such penalties through operation of § 46-746(1), which provides a violator "shall be subject to the imposition of penalties imposed through the controls adopted by the district, including, but not limited to, having any allocation of water granted or irrigated acres certified by the district reduced in whole or in part."

We disagree with LLNRD and the board's interpretation. First, the language of § 46-746(1) does not limit the possibility of judicial review of the determination of penalties. Moreover, GWMPA does not limit what parts of an order are to be reviewed under the APA, stating "[a]ny person aggrieved by any order . . . may appeal,"[64] and the APA states "the review shall be conducted . . . de novo," without limiting the review of the order.[65] As stated above, a district court in reviewing an administrative order is required to make independent factual determinations and reach independent conclusions with respect to the matters at issue.[66] Clearly, the imposition of Prokop's penalty was a matter at issue in the board's proceedings, as evidenced by the amount of thought and consideration LLNRD alleges the board undertook in determining the severity of the issued penalty.

Because the district court utilized the appropriate de novo review in considering LLNRD's imposition of the penalty and because the modified penalty conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable, the district court did not err in modifying the duration of Prokop's penalty.

## V. CONCLUSION

For the reasons stated above, the district court did not err in determining that LLNRD had authority to require actual crop yield data from Prokop, that LLNRD had authority to impose

---

[64] § 46-750.

[65] § 84-917(5)(a).

[66] See *Medicine Creek, supra* note 9.

a suspension of ground water access for noncompliance with reporting requirements, that Prokop's right to due process was not violated in the proceedings before LLNRD's board, that Prokop was not denied the possibility of competent judicial review, that the suspension of Prokop's ground water access was not a taking without just compensation, that exhibits 4 and 5 should not have been admitted as "extra-record evidence," and that Prokop was not entitled to attorney fees. The district court also did not err in its modification of the duration of Prokop's penalty.

AFFIRMED.

MILLER-LERMAN and FREUDENBERG, JJ., not participating.

PAPIK, J., concurring.

This court concludes that LLNRD had the authority to require the submission of actual crop yield data in at least partial reliance on the principle that courts are to afford deference to an agency's interpretation of its own regulations unless plainly erroneous or inconsistent. We have cited and applied this principle on many occasions over the last several decades. See, e.g., *Melanie M. v. Winterer*, 290 Neb. 764, 862 N.W.2d 76 (2015); *Kosmicki v. State*, 264 Neb. 887, 652 N.W.2d 883 (2002); *Wagoner v. Central Platte Nat. Resources Dist.*, 247 Neb. 233, 526 N.W.2d 422 (1995); *Department of Banking, Receiver v. Wilken*, 217 Neb. 796, 352 N.W.2d 145 (1984).

But while we have precedent for the principle that courts defer to an agency's interpretation of its own regulations, I am not sure that precedent rests on stable ground. The principle appears to have entered our jurisprudence in *Wilken, supra*. In that case, we cited a case from the Eighth Circuit holding that an agency is entitled to deference when interpreting its own regulations. *Id.*, citing *Columbus Community Hospital, Inc. v. Califano*, 614 F.2d 181 (8th Cir. 1980). That Eighth Circuit case, in turn, cited *Bowles v. Seminole Rock Co.*, 325 U.S. 410, 414, 65 S. Ct. 1215, 89 L. Ed. 1700 (1945), a U.S. Supreme Court case which stated that the administrative interpretation

of a regulation has "controlling weight unless it is plainly erroneous or inconsistent with the regulation." The Court in *Seminole Rock Co.* did not offer an explanation as to why the agency would be entitled to deference in those circumstances. See *Decker v. Northwest Environmental Defense Center*, 568 U.S. 597, 617, 133 S. Ct. 1326, 185 L. Ed. 2d 447 (2013) (Scalia, J., concurring in part and in part dissenting) (observing that *Seminole Rock Co.* "offered no justification whatever"). Even so, the U.S. Supreme Court reaffirmed this principle decades later in *Auer v. Robbins*, 519 U.S. 452, 117 S. Ct. 905, 137 L. Ed. 2d 79 (1997).

In recent years, however, the principle recognized in *Seminole Rock Co., supra*, and reaffirmed in *Auer, supra*, has been called into question. It has been criticized for lacking a coherent rationale, see *Perez v. Mortgage Bankers Ass'n*, ___ U.S. ___, 135 S. Ct. 1199, 191 L. Ed. 2d 186 (Thomas, J., concurring in judgment); for incentivizing the promulgation of vague regulations, see *Decker, supra* (Scalia, J., concurring in part and in part dissenting), and for violating the separation of powers, *Perez, supra* (Thomas, J., concurring in judgment). See, also, John F. Manning, *Constitutional Structure and Judicial Deference to Agency Interpretations of Agency Rules*, 96 Colum. L. Rev. 612 (1996).

The criticism leveled at *Seminole Rock Co., supra*, and *Auer, supra*, by multiple justices of the U.S. Supreme Court (including the author of *Auer*) had led some to speculate that "*Auer* may not be long for this world." *Bible v. United Student Aid Funds, Inc.*, 807 F.3d 839, 841 (7th Cir. 2015) (Easterbrook, Circuit Judge, concurring in denial of rehearing en banc). See, also, *Turtle Island Restoration Network v. US DOC*, 878 F.3d 725, 742 n.1 (9th Cir. 2017) (Callahan, Circuit Judge, dissenting in part) ("*Auer's* continued vitality is a matter of considerable debate"). Such speculation may prove to be prescient, as the U.S. Supreme Court very recently granted certiorari on the question of whether *Auer* and *Seminole Rock Co.* should be overturned. See *Kisor v. Shulkin*, 869 F.3d 1360 (Fed. Cir.

2017), *cert. granted in part sub nom. Kisor v. Wilkie*, No. 18-15, 2018 WL 6439837 (U.S. Dec. 10, 2018).

We thus appear to have adopted the principle that courts are to defer to agencies' interpretations of their own regulations by decades ago uncritically adopting a dubious proposition of federal law that itself may not stand the test of time. While that seems reason enough for reconsideration of the principle in the appropriate case, I believe there is an additional reason to do so: The principle also seems to be in tension, if not at outright odds, with Nebraska's version of the Administrative Procedure Act (APA).

In this case, and many others like it, Nebraska courts are called on to review the decisions of administrative agencies under the authority granted by the APA. The APA, however, provides that the review is to be conducted by the court "without a jury de novo on the record of the agency." Neb. Rev. Stat. § 84-917(5)(a) (Reissue 2014). This standard has been interpreted to require district courts to make independent determinations of both factual and legal issues. See *Medicine Creek v. Middle Republican NRD*, 296 Neb. 1, 892 N.W.2d 74 (2017). But if the APA directs district courts to independently decide factual and legal questions without deferring to the agency, on what basis can courts defer to the agency's interpretation of its own regulations? In my view, the lack of an obvious answer to that question is yet another reason why we should reconsider whether deference is owed to agencies' interpretations of their own regulations.

With all that said, the parties have not asked us to reconsider our precedent in this case. Without the aid of argument from the parties, I do not believe such reconsideration is appropriate here. Therefore, I concur in this court's decision in all respects. For the reasons expressed above, however, I would be open to reconsidering in a future case whether courts owe deference to agencies' interpretations of their own regulations.